STATE EX REL. MILWAUKEE COUNTY, Petitioner, V. SCHMIDT, Secretary of Department of Health & Social Services, Respondent.

*No. State 131. Argued February 4, 1971.—Decided March 5, 1971.*
(Also reported in 184 N. W. 2d 183.)

304

For the plaintiff (petitioner) there were briefs by *Robert P. Russell,* corporation counsel, and *George E. Rice,* deputy corporation counsel, attorneys, and *Robert Mortensen* of Madison, *John D. Kaiser* of Eau Claire, and *Homer C. Mittelstadt,* corporation counsel of Eau Claire county, of counsel, and oral argument by *Mr. Rice.*

For the defendant (respondent) the cause was argued by *Ward L. Johnson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The controversy arises because the defendant, Wilbur J. Schmidt, in his capacity as secretary of the department of H&SS (the defendant will be referred to as the department), has rejected all county claims, filed under sec. 49.04, Stats., for reimbursement for temporary assistance given after June 6, 1968, as general relief to state-at-large dependents. State-at-large dependents are persons who do not have a legal settlement [1] and who have resided in the state less than a year.

The department's rejection of these claims for temporary assistance was based upon an opinion of the attorney general, dated June 26, 1970, which, in substance, advised that the concept of "temporary assistance" as used in secs. 49.01 (7) and 49.04 (1), Stats., no longer existed because the durational residence requirements of relief eligibility were struck down by the federal courts as being a violation of the equal protection provision of the fourteenth amendment of the United States Constitution and therefore unconstitutional.

Pursuant to this opinion the department refused to reimburse Milwaukee county for approximately $700,000 in claims previously filed. The other 71 counties in the state were similarly affected to the extent of about $700,000. In addition, current claims of approximately $50,000 to $60,000 per month are being rejected by the department. County governments have continued to file claims for reimbursement in order to protect themselves under the procedural requirements of sec. 49.04 (3), Stats.

The petitioner takes issue with the attorney general's opinion, and because of its serious fiscal effects upon county budgetary processes we deem it a matter of *publici juris* and take original jurisdiction.

Milwaukee county, as well as other counties of the state, is obligated by secs. 49.01 (7), 49.02 and 49.03, Stats., to furnish general relief to dependent persons who

---

[1] *See* sec. 49.10, Stats.

are without legal settlement in the state and who have resided in the state less than one year.

In 1945, the legislature enacted the state dependency reimbursement program by sec. 11 of ch. 585, Laws of 1945. The underlying objective was to provide at least partial state reimbursement to the counties for relief granted to persons who migrated considerably during World War II, and who found themselves in need of general relief during the post-war adjustment period. The legislature determined that such persons who were without a legal settlement under sec. 49.10, Stats., and who had resided in the state less than one year, should be classified as state dependents. However, in succeeding years, sufficient funds were not appropriated to reimburse the counties fully under sec. 49.04 and, as a result, proration of claims occurred regularly.

For several years Wisconsin had residence requirements for eligibility for categorical welfare aids, such as Old Age Assistance, Aid to the Blind, and Aid to the Totally and Permanently Disabled. In 1957, consistent with most states, the legislature enacted a one-year residence requirement for general relief (ch. 190, Laws of 1957, and subsequent amendments). There was, however, a temporary assistance period of thirty days, including extensions for a period of one year for medical emergencies. The period for which reimbursement could be claimed was for temporary assistance. Thus, in 1967, Wisconsin had a one-year residence requirement for categorical aids and a one-year residence requirement for general relief, except the thirty-day temporary assistance and medical extensions.

In 1967 and 1968, actions were commenced in several states in federal courts to challenge the legality of durational residency requirements for eligibility under various welfare programs. In Wisconsin, two key cases were decided in the Federal District Court for the Eastern District. On November 21, 1967, a three-judge court

held that a one-year residency requirement for Aid to the Blind, Aid to Dependent Children, Old Age Assistance, and Aid to the Totally and Permanently Disabled (categorical aid programs) was invalid and issued a preliminary injunction. *Ramos v. Health & Social Services Board of State of Wisconsin* (E. D. C. Wis. 1967), 276 Fed. Supp. 474. On June 6, 1968, the same three-judge panel held that a one-year residency requirement as applied to applicants for general relief as opposed to categorical aid benefits was also unconstitutional and issued a preliminary injunction. *Denny v. Health & Social Services Board of State of Wisconsin* (E. D. C. Wis. 1968), 285 Fed. Supp. 526. Similar decisions were rendered by various federal courts throughout the country, and several of the decisions were appealed and consolidated in the United States Supreme Court.

In *Shapiro v. Thompson* (1969), 394 U. S. 618, 89 Sup. Ct. 1322, 22 L. Ed. 2d 600, the supreme court held that all such durational residency requirements as applied to categorical aid programs were unconstitutional, being in violation of the equal protection and due process clause of the fourteenth amendment. Though the case dealt specifically with categorical aid programs, it is clear that the holding is also applicable to general relief programs.

Following the United States Supreme Court decision in *Shapiro v. Thompson, supra,* (the case was decided on April 21, 1969), the 1969 Wisconsin legislature eliminated the one-year residency requirement in each of the four categorical aid programs, and in lieu thereof established a period of from fifteen to thirty days for processing these types of applications. It left secs. 49.01 (7) and 49.04, Stats., of the general relief provisions unchanged. However, it not only continued the state dependents' appropriation but increased it from the $550,000 appropriated in 1967, to $580,000 for 1969–1970, and $630,000 for 1970–1971, for the administration of sec. 49.04. Likewise, it determined that payments,

reimbursement, and the cost of caring for state dependents' health care under secs. 142.05 (4), 142.08 (1) and (1m) should not be changed.

The resolution of the controlling issue is dependent upon a construction of secs. 49.01 (7) and 49.04 (1) and (2), Stats.

These sections, as stated above, were not amended in 1969 after the *Shapiro Case,* so that both before and after the federal litigation and the 1969 amendments they provided as follows:

"**49.01 Definitions.** . . .

"(7) 'Eligible' or 'eligibility' means a dependent person who has continuously resided for one whole year in this state immediately prior to an application for relief except that temporary assistance including medical care may be granted during the initial year to meet an emergency situation pending the negotiations for the return of the applicant and family to the former place of residence or legal settlement outside this state or to meet a medical emergency developing during the initial one year period of residence. Such temporary assistance shall not extend beyond 30 days unless a medical emergency requires further extension. Notwithstanding the foregoing, whenever anyone leaves this state, and was at the time of his departure eligible as to residential requirements to receive general assistance under this section other than emergency aid, such person upon returning within one year to this state, shall be eligible to receive such general assistance in this state without limitation on the period of relief to be granted so long as the need continues."

"**49.04 State dependents.** (1) From the appropriation made in s. 20.435 (4) (e) the state shall reimburse the counties for such temporary assistance as may be needed pursuant to s. 49.01 (7) for all dependent persons who do not have a settlement within any county in this state and who have resided in the state less than one year.

"(2) The department shall make suitable rules and regulations governing the administration of temporary assistance under s. 49.01 (7) including the notification of reimbursement charges, the relief to be provided, the presentation of claims for reimbursement and other matters necessary to the provision of relief to such state de-

pendent persons receiving temporary assistance. The observance of such rules and regulations by a county shall be a condition for reimbursement."

The plaintiff-county argues that the concept, as it appears in the statutes today, should be interpreted to mean the aid given welfare applicants by the county as general relief during the up to thirty-day processing period of their applications for categorical aid is temporary assistance. This is assuming that the recipients fall within the definition of state dependents, *i.e.*, have no legal settlement in the state and have not resided in the state more than one year. Under this interpretation the unconstitutional residency requirement appearing in sec. 49.01 (7), Stats., may be severed, and the section still provides a basis for reimbursement by the state under sec. 49.04 (1) and (2).

The defendant-department, on the other hand, argues that the concept as used in these sections means a type of aid given to persons who have resided in the state less than one year pending negotiations for their return to their former place of residence outside the state, and that this concept was in no way changed by the enactment of ch. 154, Laws of 1969. If this is true, then when the United States Supreme Court struck down durational residency requirements as a condition for receiving aid, the concept of temporary assistance ceased to exist because it has no meaning without the residency requirement. Therefore the defendant would no longer be required to make any reimbursement under sec. 49.04, Stats.

The attorney general adopted the latter view in his opinion, and unless a legislative intent to change the meaning of temporary assistance can be found in the enactment of ch. 154, Laws of 1969, it would appear that he is correct.

As stated earlier, the state dependents' program was originally created by the enactment of ch. 585, Laws of

1945. The underlying purpose of sec. 49.04, Stats., was to relieve counties of the added burden of relief to transients from outside the state as a result of the migrations following World War II by providing state reimbursement for aid given to persons who had no legal settlement within the state, and who had resided in the state for less than one year. It was intended that the counties or local units of government should remain primarily liable for the relief of persons whose need for relief could be fairly said to have arisen in the background of local conditions. 40 Op. Atty. Gen. (1951), 385.

However, it should be noted that this was not simply a blanket authorization to grant relief without any further action on the part of the county. Sec. 49.09 (3), Stats., required that when a dependent person who did not have a legal settlement in the state applied for relief, the county had to investigate to determine if and where he had a legal settlement, and attempt to secure his removal to that place. Therefore, up to a certain point, the aid given a state dependent was of the same nature as that expressed in the newer sec. 49.01 (7) and was, in fact, designated as "temporary assistance" in sec. 49.09 (3).

If it was determined that the person had no prior legal settlement in another state, or if authorization for his return there could not be secured, then the aid which he received lost its character as temporary assistance and became general relief for the remainder of his first year of residence in the state and thereafter. Therefore, the concept of temporary assistance as it existed in the statutes prior to the enactment of ch. 190, Laws of 1957, was relatively the same as that more specifically defined after the 1957 statutory changes.

Because of the insufficiency of funds to reimburse the counties for all the aid given state dependents, extending up to one year in some cases, and because they existed in other welfare programs, a one-year durational

residency requirement was imposed as a condition of eligibility for general relief by the enactment of ch. 190, Laws of 1957, which created sec. 49.01 (7), Stats. The same chapter also repealed and re-created secs. 49.04 (1) and (2) and 49.09 (3) to conform with sec. 49.01 (7).

These 1957 statutory changes did not affect the definition of a state dependent, nor did they change the concept of temporary assistance as it had previously been expressed in sec. 49.09 (3), Stats., alone. The same idea of assistance pending negotiations was incorporated in sec. 49.01 (7), though it was more clearly defined and was broadened to include return to a former residence as well as a former legal settlement.

If the plaintiff-county's argument for severance of the invalid residency requirement from the temporary assistance provision occurred at this point in the legislative history, it does not appear that it could have been sustained. In addition to the other requirements necessary to effect a severance, it must not appear from the act itself that the legislature intended it to be effective only as an entirety, or that the valid portion would never have been enacted alone. *Burke v. Madison* (1962), 17 Wis. 2d 623, 117 N. W. 2d 580, 118 N. W. 2d 898; 2 Sutherland, *Statutory Construction* (3d ed.), p. 176, sec. 2403.

Prior to the 1957 changes, though reimbursement pursuant to sec. 49.04, Stats., was not limited to temporary assistance, that concept was expressed in sec. 49.09 (3) as that aid given pending an attempt at removal to the state of legal settlement. Subsequent to the changes, the concept of temporary assistance was specifically defined in sec. 49.01 (7) as that given pending negotiations to return the dependent to his former residence or legal settlement. In addition to this continuity of definition, there is the clear legislative intent to limit the amount of aid available to state dependents to a maximum of thirty days, barring a medical emergency. In view of

these factors, it cannot be said that the legislature would have re-created a provision for temporary assistance that was not limited by the purpose of sec. 49.01 (7) as a whole.

However, as the plaintiff points out, the issue has been raised after the legislature has had the opportunity of reviewing and modifying the provisions of ch. 49, Stats., in light of the *Shapiro* decision, *supra*. Despite the fact that it saw fit to eliminate the residency requirements from the four categorical aid programs, the legislature left the general relief and reimbursement provisions of the chapter untouched and, in fact, increased the state dependents' appropriation in sec. 20.435 (4) (e), from the previous sum of $550,000 to $580,000 for 1969–1970, and $630,000 for 1970–1971.

Sec. 990.001, Stats., provides:

"**Construction of laws; rules for.** In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature: . . .
"(11) SEVERABILITY. The provisions of the statute are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

Even when material provisions of the statute are declared unconstitutional it is still possible to sever the statute and hold the remaining portions valid " ' ". . . if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, . . .'' ' " *State ex rel. Milwaukee County v. Boos* (1959), 8 Wis. 2d 215, 224, 99 N. W. 2d 139;[2] also, 2 Sutherland, *Statutory Construction* (3d ed.), p. 176, sec. 2403.

---

[2] The defendant and the attorney general in his opinion cite *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 515-o, 53

None of the federal cases, *Ramos, Denny* or *Shapiro, supra,* which held the durational residence requirements for categorical aids and general relief unconstitutional, in any way referred to, nor were they concerned with, which unit of the state or local government was to bear the financial burden because of the changed residential concepts resulting from the decisions.

We deem the fact that the legislature not only continued the appropriation for temporary assistance but increased it is highly significant of its intent to continue the policy of assisting the local units of government in meeting the cost of temporary assistance furnished to needy persons who had just come into their communities and had no legal settlement within the state.

The concept of temporary assistance for state-at-large dependents for a period not to exceed thirty days (with medical extensions) is entirely compatible with the thirty-day period to establish eligibility for any of the categorical aid programs. The counties are only asking for reimbursement, under sec. 49.04, Stats., for this period of temporary assistance. We believe the legislature intended they could file claims and be paid pursuant to sec. 49.04 and the rules of the department set up pursuant to this section.

We therefore hold the unconstitutional provisions of sec. 49.01 (7), Stats., providing for one-year residence requirements and for removal from the state, are severed from the remaining portion of the statute so as to permit the counties to continue to file claims for temporary assistance under sec. 49.04.

N. W. 2d 514, 55 N. W. 2d 40, for the proposition that the wording of sec. 49.01 (7), Stats., does not permit the severability of the unconstitutional provisions so as to leave a complete law in some reasonable aspect. The *Muench Case* specifically states it does not depend upon the then recently enacted sec. 370.001 (11), now sec. 990.001. While we do not agree that the *Muench Case* fully supports the defendant's position, the problem is now controlled by sec. 990.001.

The department shall accept the claims of the counties for temporary assistance under the statute and department rules and pay them insofar as they can be under the appropriations made.

In view of the statutory construction we have adopted, we do not reach the additional issues raised by the plaintiff-county.

*By the Court.*—Petition granted with directions to the secretary of the Department of Health & Social Services to accept and process county claims for temporary assistance consistent with this opinion.