PETERSON, Plaintiff-Respondent, v. NATURAL RESOURCES BOARD FOR STATE OF WISCONSIN, Defendant-Appellant.

Supreme Court

*No. 77–216. Argued January 7, 1980.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 845.)

For the appellant the cause was argued by *Robert B. McConnell*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the respondent there was a joint brief by *Suzanne S. Havens* and *Jonjak, Havens & Kase* of Sturgeon Bay,

and *David G. Walsh* and *Walsh, Walsh & Sweeney* of Madison, and oral argument by *David G. Walsh.*

WILLIAM G. CALLOW, J. This is an appeal by the Natural Resources Board for the State of Wisconsin (Board) from a judgment of the Circuit Court for Dane County declaring that Wis. Adm. Code, sec. NR 25.08 (2) (a) 5 (Register, September, 1976, No. 249), is illegal and invalid. The challenged rule, currently Wis. Adm. Code, sec. NR 25.08 (2) (a) 6, prohibits the use of gill nets of a particular size in Lake Michigan south of a line running due east from the red navigational buoy marking the entrance to Baileys Harbor. The action was commenced in the circuit court, pursuant to sec. 227.05 (1), Stats., by plaintiff-respondent Giles Peterson (Peterson), a commercal fisherman, seeking a declaratory judgment holding the challenged rule to be illegal. We conclude that the rule is valid and legal, and we reverse.

Wis. Adm. Code, sec. NR 25.08 (2) (a) 5, an administrative rule promulgated by the Board, took effect October 1, 1976 (Register, September, 1976, No. 249), and provides as follows:

"NR 25.08 **Legal commercial fishing gear.** (1) INTRODUCTION. The following are legal commercial fishing gear in the outlying waters when used in accordance with the provisions set forth in this chapter.

"(2) LAKE MICHIGAN AND GREEN BAY. (a) Gill nets may be used under permit only.

" . . .

"5. Gill nets of mesh size exceeding 4½" stretch measure and less than 6½" stretch measure may be used only in the waters of Green Bay and of Lake Michigan north of a line running due east from the red navigational buoy marking the entrance of Baileys Harbor. Such gill nets shall not exceed 30 meshes in depth, except ½ can be 50 meshes deep on request only until July 1, 1978."

Peterson claims the rule results in a prohibition of fishing for whitefish in areas of Lake Michigan, south of the Baileys Harbor line, interfering with and impairing the legal rights and privileges arising out of his commercial fishing license. Peterson also contends that the legislature did not delegate to the Board authority to enact rules which prohibit fishing in delineated areas of Lake Michigan.

The Board denies that sec. NR 25.08(2)(a)5, Wis. Adm. Code, prohibits fishing for whitefish south of the Baileys Harbor line because whitefish may be commercially fished and in fact are caught south of the line in pound nets, fyke nets, and other entrapment gear. The Board denies that the rule is an area restriction on plaintiff's license and claims the rule is a valid regulation of the type, size, and placement of fishing gear and net sizes. The Board justifies the gill net size restriction because it "reduces the risk of catching large percentages of lake trout, coho salmon, chinook salmon or other fish which at the present time are illegal except for sport fishing."

Peterson moved for a temporary injunction, and on December 9, 1976, a hearing was held on the motion. He testified that he was a commercial fisherman who fished primarily for whitefish. He stated that he caught whitefish with a gill net. Peterson admitted there are ways other than the use of the prohibited gill nets to commercially catch whitefish. These include use of entrapment gear—a net placed on stakes, and use of trap nets— nets secured by anchor which lead fish through tunnels until trapped. He also stated that fyke nets are used.

Peterson claimed that an effect of the rule is to prohibit fishing for whitefish south of the Baileys Harbor line because of the expense of the alternative equipment and weather limitations on its use. He testified that winter weather conditions prevent use of entrapment

gear because ice would cut down an anchored net, cut lines leading to the surface, and cause the boats to become too slippery on which to work. He also stated that entrapment gear cannot be used in many areas south of the line because of rocky bottom conditions; the stakes securing entrapment gear can only be placed in softer lake bottoms. Peterson also testified that an effect of the rule is to concentrate whitefish fisheries into a smaller area, resulting in congestion; nets are ripped and damaged because increased numbers of fishermen place their nets in the reduced area. Peterson testified that 88 percent of whitefish production is done by use of gill nets but that three fisheries in Door county use entrapment gear; he stated he could not afford entrapment gear. Peterson testified that the rule has had a "considerable effect" on his income, "considerable" meaning 25 percent.

Peterson testified he believed the Baileys Harbor line was drawn because of sport fishing pressure and that the rule was adopted to accommodate sport fishermen who fish for lake trout. He acknowledged that use of the 4½ to 6½ inch stretch mesh gill nets south of the Baileys Harbor line resulted in a "considerable amount of lake trout" being taken, "considerably more" than the 10 percent limitation on the percentage of illegal fish allowed. However, Peterson claimed that only 5 percent of the illegal fish caught would die if gill nets were properly tended.

Ronald Poff, employed by the Wisconsin Department of Natural Resources as Staff Supervisor, Great Lakes and Boundary Waters, testified that Department of Natural Resources statistics indicated that 5 to 50 percent of the fish caught in gill nets are killed and that use of gill nets south of the Baileys Harbor line could conceivably result in less than 50 percent of the catch being whitefish. He explained that a fish is caught in a gill

net when it swims headfirst into the net; unable to swim through because of its girth behind the gills, its gill covers prevent the fish from backing out of the net. Because of the normal relationship between length and girth in fish populations, regulation of gill net mesh size allows the Board to control the size of fish caught in gill nets. Poff testified that the purpose of the rule was to protect trout. He stated that 92 to 97 percent of the lake trout planted under state programs were planted south of the Baileys Harbor line and that, due to the sedentary nature of lake trout, at least 80 percent of the trout remain south of that line.

Dennis Hickey, a commercial fisherman, testified that it was a common belief that gill nets were more destructive than entrapment gear, in the sense that they cause some fish to die whereas entrapment gear does not and that this could be a reason for the rule.

In a memorandum decision dated May 4, 1977, the trial court held that the rule clearly prohibited fishing on an area basis and that, therefore, the Board exceeded its statutory power in enacting sec. NR 25.08(2)(a)5, Wis. Adm. Code. Consequently, the rule was declared illegal and void. Judgment was entered accordingly.

A single issue is presented: Did the Board exceed its statutory authority by promulgating sec. NR.25.08(2)(a)5, Wis. Adm. Code, which regulates net size and applies to a limited area of Lake Michigan if a practical effect of such regulation is to prohibit the commercial fishing for a specified species of fish on an area basis?

It is the general rule that an administrative agency has only those powers which are expressly conferred or which are fairly implied from the statutes under which it operates. *State (Dept. of Admin.) v. ILHR Dept.*, 77 Wis.2d 126, 136, 252 N.W.2d 353 (1977); *Racine Fire and Police Comm. v. Stanfield*, 70 Wis.2d 395, 399, 234

N.W.2d 307 (1975). An administrative agency may not issue a rule that is not expressly or impliedly authorized by the legislature. *State (Dept. of Admin.) v. ILHR Dept., supra* at 136; *Kachian v. Optometry Examining Board,* 44 Wis.2d 1, 8, 170 N.W.2d 743 (1969).

Sec. 15.34, Stats., authorizes the Board to direct and supervise the Department of Natural Resources. In promulgating NR 25.08(2)(a)5, Wis. Adm. Code, the Board relies on the statutory authorization in secs. 23.09 (1) and (2), 29.085, and 29.174, which provide in pertinent part:

"**23.09 Conservation act.** **(1)** PURPOSES. The purpose of this section is to provide an adequate and flexible system for the protection, development and use of forests, fish and game, lakes, streams, plant life, flowers and other outdoor resources in this state.

"**(2)** DEPARTMENTAL RULES; STUDIES; SURVEYS; SERVICES; POWERS; LONG-RANGE PLANNING. The department may make such rules, inaugurate such studies, investigations and surveys, and establish such services as it deems necessary to carry out the provisions and purposes of this section. The department shall establish long-range plans, projects and priorities for conservation. . . ."

"**29.085 Department to regulate hunting and fishing in interstate waters.** The department may regulate hunting and fishing on and in all interstate boundary waters, and outlying waters specified in s. 29.01(4). Any act of the department in so regulating the hunting and fishing on and in such interstate boundary waters and outlying waters shall be valid, all other provisions of the statutes notwithstanding, provided such powers shall be exercised pursuant to and in accordance with ss. 23.09(2) and 29.174."

"**29.174 Conservation of fish and game; powers of department.** **(1)** There shall be established and maintained, as hereinafter provided, such open and close seasons for the several species of fish and game, and such bag limits, size limits, rest days and conditions governing the taking of fish and game as will conserve the fish and game supply and insure the citizens of this state con-

tinued opportunities for good fishing, hunting and trapping. . . ."

"(2)(a) The department shall establish open and closed seasons, bag limits, size limits, rest days and other conditions governing the taking of fish or game, in accordance with the public policy declared in sub. (1), but all fishing seasons on inland waters shall open on a Saturday. Such authority may be exercised either with reference to the state as a whole, or for any specified county or part of a county, or for any lake or stream or part thereof.

"(3) The department may exercise the authority conferred upon it in sub. (2) by adopting rules either on its own motion or on petition from any group of citizens. . . ."

". . .

"(6) All rules of the department in conformity with law are prima facie reasonable and lawful.

". . .

"(9) The present statutes regulating open and closed seasons, bag limits, size limits, rest days and other conditions governing the taking of fish or game shall continue in full force and effect until modified by rules of the department, as provided in this section, or by subsequent acts of the legislature."

Sec. 29.01(4), Stats., includes Lake Michigan in its classification of " 'outlying waters.' " Sec. 23.09(1) and (2) state that the Department may make such rules as it deems necessary for the protection, development, and use of fish. Sec. 29.085 provides that the Department may regulate fishing on Lake Michigan and that its actions in so doing shall be valid, "all other provisions of the statutes notwithstanding" if the Department's action is taken pursuant to and in accordance with secs. 23.09(2) and 29.174. Sec. 29.174 requires the Department to establish the conditions governing the taking of fish as are necessary to conserve the supply of fish and insure Wisconsin citizens continued opportunities for good fishing. Sec. 29.174(3) allows the Department to exercise this au-

thority by adopting rules. Sec. 29.174(2) (a) states that the Department may exercise its authority to establish conditions governing the taking of fish "either with reference to the state as a whole, or for any specified county or part of a county, *or for any lake* or stream *or part thereof.*" (Emphasis added.)

That secs. 23.09, 29.085, and 29.174, Stats., authorize net size limitations, such as those set forth in NR 25.08 (2) (a) 5, Wis. Adm. Code, is not contested by Peterson. However, Peterson argues that the rule must be found invalid because an effect of the rule is to prohibit the fishing for whitefish in Lake Michigan on an area basis. Relying on sec. 29.33, Stats. 1975[1] he contends that the Board and Department may not promulgate rules which achieve this result.

Sec. 29.33, Stats. 1975, provides the Department with specific authority to limit the number of commercial fishing licenses and to designate the areas where commercial fishing operations may be conducted in Lake Superior. Peterson argues that, because Lake Superior is specifically mentioned, the Department is not authorized to regulate fishing in Lake Michigan on an area basis. Asserting that the Department cannot do so indirectly what it cannot do directly, Peterson contends the

[1] Sec. 29.33, Stats. 1975, provides in part:

"**29.33 Net and set hook fishing in outlying waters.** (1) LICENSE AUTHORIZED. Any person desiring to conduct commercial fishing operations on any of the outlying waters shall first obtain a commercial fishing license. The department may limit the number of such licenses to be issued and designate the areas in the outlying waters of Lake Superior under the jurisdiction of this state where such licenses may conduct commercial fishing operations. These determinations shall be based on the available harvestable population of fish and in the wise use and conservation of such fish so as to prevent overexploitation. The department may adopt rules defining the qualifications of licensees in the reasonable exercise of this authority . . ."

Department cannot promulgate rules which have the effect of prohibiting fishing in Lake Michigan on an area basis. Peterson claims the Board cannot rely on other grants of authority to justify the rule because sec. 29.33 contains a more specific grant of rule-making authority; that all other grants of authority are thereby negated, under the canon of construction that a more specific statute controls when in conflict with a general statute. Therefore, Peterson concludes that the Board was without authority to promulgate sec. NR 25.08(2)(a)5, Wis. Adm. Code, and the rule is illegal and void.

We conclude this argument is without merit.

Sec. 29.33, Stats. 1975, does not preempt the grants of rule-making authority contained in secs. 23.09, 29.085, and 29.174. As a rule adopted under sec. 29.085, and pursuant to and in accordance with secs. 23.09(2) and 29.174, NR 25.08(2)(a)5, Wis. Adm. Code, is "valid, *all other provisions of the statutes notwithstanding.*" (Emphasis added.) Sec. 29.085. Even if sec. 29.33 contains a grant of authority more specific than the general grants contained in sec. 23.09, 29.085, and 29.174, the grant contained in sec. 29.33 is not controlling and is not exclusive.

"[T]he rule that the more specific governs the more general is a rule of construction which is not applied automatically but is only resorted to when the legislative intent is not otherwise clear from a reading of the two provisions in question." *State v. Dairyland Power Cooperative,* 52 Wis.2d 45, 53, 187 N.W.2d 878 (1971). Secs. 23.09, 29.085, and 29.174, Stats., authorize the Department to adopt rules regulating the taking of fish. Sec. 29.174(2)(a) authorizes the department to establish "open and closed seasons, . . . size limits, . . . and other conditions governing the taking of fish" and specifically provides that this "authority may be exercised . . . for any lake or stream or part thereof." Sec. 29.33,

Stats. 1975, represents an additional grant of authority to limit the number of commercial fishing licenses that are issued and to designate areas of Lake Superior in which those licensees may conduct commercial fishing operations. The text of sec. 29.33 evidences a legislative concern with the problem of overexploitation; the statute authorizes the Department to limit the areas of Lake Superior where commercial fishing may take place in an effort to conserve and maintain those species which are fished commercially. The rule that the more specific of two statutes prevails "requires more than the mere existence of one general and one specific statute. It is also necessary that there be an irreconcilable conflict between the two provisions in question." *State v. Dairyland Power Cooperative, supra* at 53. No irreconcilable conflict appears here. Rather than restricting the Department's authority, sec. 29.33 increases the power of the Department by allowing it to regulate commercial fishermen as well as the conditions and means of taking fish. We conclude the Department and Board were free to exercise the rule-making authority granted by secs. 23.09, 29.085, and 29.174.

We now consider the question of whether NR 25.08 (2)(a)5, Wis. Adm. Code, an otherwise valid rule, is invalid because it has the effect of restricting the area where commercial fishing licenses may be used in Lake Michigan, a result which the Department's power to accomplish directly, Peterson argues, is impliedly denied by sec. 29.33, Stats. 1975.

Here the trial court found that "[t]he effect of the challenged rule is clearly to prohibit fishing on an area basis." The trial court also found that "the only purpose and objective of the regulation is to prohibit the fishing for whitefish south of the line." The trial court's finding that NR 25.08(2)(a)5, Wis. Adm. Code, has the effect

of regulating where Peterson may use his commercial fishing license does not further Peterson's argument. Subject to exceptions not relevant here,[2] it is well settled that legislation will not be invalidated merely because a concurrent, predictable effect of the legislation achieves an impermissible result if a reasonable, predictable factual effect of the legislation attains a goal the legislature is authorized to pursue.[3] We believe this principle applies with equal validity to acts which are legislative in their character.[4] We do not believe the trial court's assessment of the motive of the Board in promulgating the regulation to be determinative. Rather, we conclude this finding of fact to be clearly erroneous, being contrary to the great weight and clear preponderance of the evidence.[5] No evidence in the record supports this finding of the trial court. All three witnesses testified at the hearing that the rule was adopted as a result of sport fishing pressures to reduce the number of lake trout being taken in the nets of commercial fishermen. Accord-

---

[2] *See: Washington v. Davis*, 426 U.S. 229, 239–48 (1976); *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 264–68 (1977).

[3] This rule has been applied in circumstances where it clearly appeared that the legislature was attempting to accomplish by indirect means that which it had been expressly precluded from doing directly. *Compare: Building Height Cases*, 181 Wis. 519, 529, 195 N.W. 544 (1923), *with Piper v. Ekern*, 180 Wis. 586, 194 N.W. 159 (1923); *State ex rel. Thomson v. Giessel*, 265 Wis. 558, 564–65, 61 N.W.2d 903 (1953), *with State ex rel. Thomson v. Giessel*, 262 Wis. 51, 53 N.W.2d 726 (1952). *See also: State ex rel. Harvey v. Morgan*, 30 Wis.2d 1, 11–13, 139 N.W.2d 585 (1966).

[4] Rule-making by the Board and the Department pursuant to secs. 23.09, 29.085, and 29.174, Stats., involves the exercise of legislative powers. *State v. Sorenson*, 218 Wis. 295, 298–99, 260 N.W. 662 (1935); *Olson v. State Conservation Comm.*, 235 Wis. 473, 481–82, 293 N.W. 262 (1940).

[5] *See: Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 249–50, 274 N.W.2d 647 (1979); sec. 805.17(2), Stats.

ingly, the trial court erred in relying upon its assessment of the Board's motive in its determination that the challenged rule is invalid.

Our conclusion would not differ if we accepted the trial court's finding because this "fact" is immaterial. "It is of no legal consequence to say that the plan is a subterfuge. . . . That may be admitted without answering the question thus presented one way or the other." *Loomis v. Callahan*, 196 Wis. 518, 524, 220 N.W. 816 (1928). On review of acts "which are legislative in their character," " '[judicial] inquiry is *limited to the question of power*, and does not extend to the matter of expediency, the motive of the legislators, or the reasons which are spread before them to induce the passage of the act.' " *Tilly v. Mitchell & Lewis Co.*, 121 Wis. 1, 10, 98 N.W. 969 (1904), quoting *Angle v. Chicago, St. Paul, Minneapolis and Omaha Ry. Co.*, 151 U.S. 1, 18 (1894) (Emphasis in *Tilly*). Because the promulgation of NR 25.08 (2) (a) 5, Wis. Adm. Code, involved the exercise of legislative power and was an act legislative in character, the only relevant question is whether the Board is empowered by secs. 23.09, 29.085, and 29.174, Stats., to adopt a rule which protects certain types of fish by regulating the types of fishing gear which may be used in a specified area of Lake Michigan. As we have indicated, the Board is so empowered.

We conclude it was error for the trial court to invalidate the rule because it had a concurrent effect of substantially reducing the commercial whitefish fishery in the specified area and because of the trial court's determination of the Board's motives. Additionally, as we have indicated above, it was error for the trial court to conclude that NR 25.08 (2) (a) 5, Wis. Adm. Code, is void because its promulgation exceeds the authority granted

the Board and the Department by secs. 23.09, 29.085, and 29.174, Stats.[6]

*By the Court.*—Judgment reversed and cause remanded for entry of a judgment consistent with this opinion.

[6] Similar regulations were upheld in *Olson v. State Conservation Comm., supra* at 487–88.