BROWN COUNTY, Plaintiff-Appellant-Petitioner,

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES, Defendant-Respondent.

Supreme Court

*No. 80–461. Argued June 2, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 247.)

38

For the petitioner there were briefs (in court of appeals) and oral argument by *John C. Jacques*, assistant corporation counsel.

For the respondent the cause was argued by *Donald P. Johns*, assistant attorney general, with whom on the

brief (in court of appeals) was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   On this review we are asked to determine whether a rule promulgated by the Department of Health and Social Services (Department) relating to relief for state dependents was enacted pursuant to statutory authority and whether the rule-making process complied with the procedures outlined in Chapter 227, Stats. Brown County (County) commenced a declaratory judgment action in circuit court under sec. 227.05 to challenge the validity of Wis. Adm. Code Sec. PW–PA 20.15(6),[1] promulgated by the Department ef-

---

[1] "PW–PA 20.15   **Reimbursement for state dependents.**

". . . .

"(6) REQUIREMENTS FOR REIMBURSEMENT.  (a) No reimbursement for relief granted to state dependents as defined in s. 49.04 (1), Stats. shall be provided to counties unless the county claiming reimbursement for such relief has adopted written standards which apply to all parts of the county relative to the eligibility for and amount of relief granted.

"1. The standards so adopted shall be made available to applicants and recipients of relief for which reimbursement is sought under s. 49.04, Stats., and to the public.

"2. Benefit standards so issued shall be reasonably adequate for health and decency as provided under (2) of this section.

"3. If such standards adopted by a county establish a benefit level less than that provided for the AFDC program under s. 49.19 (11), Stats., the county shall file a statement with the secretary of the department of health and social services containing detailed information demonstrating that the standard as adopted is reasonable and necessary to provide the items listed in s. 49.01(1), Stats.

"(b) No reimbursement for relief granted state dependents under s. 49.04(1), Stats., shall be provided to counties unless the county claiming reimbursement for such relief makes provision for the following procedural safeguards which apply to all parts of the county for all persons whose applications are denied in whole or in part.

"1. Any denial in whole or in part of an application for relief shall be accompanied by a written statement informing the appli-

fective August 1, 1978. The County argued below, and again before this court, that the rule exceeds the scope of the Department's legislatively delegated rule-making authority and, further, that because the final version of the rule as adopted differs substantially from the version initially proposed and upon which public hearings were held, the final version should have been the subject of further public hearings. The circuit court for Dane county, Hon. P. CHARLES JONES presiding, determined that the rule was within the Department's statutory rule-making authority and, further, that the rule-making process complied with Chapter 227. The court of appeals, in an unpublished opinion, affirmed the circuit court.

cant of the basis of denial with reference to the appropriate standard upon which the denial was based. Said statement shall be provided to the applicant no later than 3 working days from the date of the denial. Said statement shall also inform the applicant of a right to a timely and impartial evidentiary hearing.

"2. Any hearing so requested shall be held before an impartial person who has not participated in the decision under review.

"3. Any hearing so requested must be held within 5 working days after the request is received. If the hearing is not held within 5 working days the applicant shall be provided with relief until such time as a hearing is held and a decision is rendered.

"4. The applicant at the hearing shall be granted the opportunity to present evidence and argument in person or by a representative.

"5. The applicant shall be given the opportunity to cross examine all witnesses relied upon by the relief agency.

"6. The decision must rest upon evidence presented at the hearing and where there is an issue of credibility or veracity, the decision may not rest on mere uncorroborated hearsay.

"7. A written decision shall be issued no later than 5 working days after the hearing and shall indicate the reasons for the final determination and the evidence relied upon in reaching that determination.

"(c) The department shall establish a system for ongoing monitoring of compliance with this rule and for the denial of state reimbursement to counties that do not comply with this rule."

*Brown County v. DH&SS*, 99 Wis.2d 807, 301 N.W.2d 462 (Ct. App. 1980). We affirm.

## I.

We are confronted with a threshold problem raised by the Department concerning the County's standing to challenge the substance of the rule. Relying upon this court's opinion in *Dane County v. H & SS Dept.*, 79 Wis. 2d 323, 255 N.W.2d 539 (1977), the Department argues that while the County may have standing to question the Department's compliance with Chapter 227, Stats., rule-making procedures, it cannot otherwise contest the validity of a rule promulgated by a state agency. The County's position appears to be that the question of a rule being within the scope of an agency's delegated authority relates to the procedure by which it was enacted. Accordingly, the County, too, relies on *Dane County* to support its standing in this case.

It does not appear from the record that the Department questioned the County's standing until the case reached the court of appeals. Ordinarily we do not consider issues which were not raised at the trial court level, and we would have no difficulty concluding from the record before us that the Department waived its right to have this issue decided. But as we have often repeated, this rule is merely one of administration and does not limit our power to reach such issues in a proper case. *Wirth v. Ehly*, 93 Wis.2d 433, 443–44, 287 N.W.2d 140 (1980) ; *Arsand v. City of Franklin*, 83 Wis.2d 40, 55–56, 264 N.W.2d 579 (1978). The fact that the parties to this review rely on the same case to support conflicting positions on an important question of law is sufficient, in our view, to warrant discussing the matter, notwithstanding the Department's apparent failure to raise it in the circuit court.

This court has often expressed the fundamental rule that counties, as creatures of the legislature, exist largely for purposes of political organization and administrative convenience. *State ex rel. Conway v. Elvod,* 70 Wis.2d 448, 450, 234 N.W.2d 354 (1975); *Kyncl v. Kenosha County,* 37 Wis.2d 547, 555, 155 N.W.2d 583 (1968); *State v. Mutter,* 23 Wis.2d 407, 412–13, 127 N.W.2d 15 (1964), *appeal dismissed* 379 U.S. 201 (1964). Because of its status as an arm of the state, a county cannot be heard to challenge or question the wisdom of its creator. *See: Marshfield v. Cameron,* 24 Wis.2d 56, 63, 127 N.W. 2d 809 (1964); *McDougall v. Racine County,* 156 Wis. 663, 665–66, 146 N.W. 794 (1914). It follows logically from this, for example, that a county may not raise a constitutional challenge to a statute. *Columbia County v. Wisconsin Retirement Fund,* 17 Wis.2d 310, 317, 116 N.W.2d 142 (1962).

An administrative agency, too, is a creature of the legislature. *State ex rel. Thompson v. Nash,* 27 Wis.2d 183, 189, 133 N.W.2d 769 (1965). Where the legislature has set forth the "fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose." *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 505, 220 N.W. 929 (1928). *See also: Schmidt v. Local Affairs & Development Dept.,* 39 Wis.2d 46, 59, 158 N.W.2d 306 (1968). As a general matter, an administrative agency has only those powers as are expressly conferred or necessarily implied from the statutory provisions under which it operates, *State (Dept. of Admin.) v. ILHR Dept.,* 77 Wis.2d 126, 136, 252 N.W.2d 353 (1977), but acting within that grant of delegated power, an agency effectuates the will of the legislature.

The *Dane County* case, consistent with these principles, stated that a county could not challenge "the mandate of its creator" or "attack supervisory powers of the agency." 79 Wis.2d at 331. Where an administrative agency acts wholly within the scope of its delegated authority, any challenge to the substance of its actions is, in effect, a challenge to the wisdom of the legislature and is barred by the traditional no-standing rule. But where the challenge is directed not at the wisdom of a rule or its substantive validity, but rather at whether its enactment complied with statutory rule-making procedures, we found that a county did have standing to proceed. Although it is true, as the Department points out, that in *Dane County* we based our finding of the county's standing on the language of sec. 227.16, Stats., that case need not be so narrowly read. There the county sought to question the department's compliance with rule-making procedures established by the legislature. To raise such a challenge is to charge the agency with acting in contravention of the express wishes of the legislature, and while we declined to rely upon this reasoning in the *Dane County* case, it is nonetheless true that such a challenge, because it deals with an alleged failure to comply with a legislative mandate, does not transgress the fundamental prohibition against questioning the wisdom of the creator which we were careful to leave intact.

Allegiance to this rationale leads us to conclude that the County must also have standing to charge an administrative agency with acting beyond the scope of its delegated authority. If administrative agencies may legitimately act only within the bounds of their delegated authority, then to charge an agency with exceeding that authority is not to question the propriety of legislative action but, as we said in *Dane County*, "to vindi-

cat[e] legislative requirements." 79 Wis.2d at 332. We are aware that this holding may open the way for challenges to administrative rules on vaguely articulated grounds relating to the scope of delegated authority, and the prospect is not pleasing. Yet the alternative is equally unpleasant: Without a forum in which to challenge the authority of an agency to enact a particular rule, a county affected thereby could be subject to the unchecked whims of unauthorized administrative lawmaking. We reiterate again the caveat in *Dane County:* We are not retreating from the traditional rule that an arm of the state has no standing to challenge the state's decisions; once it is established that a particular rule is within the scope of an agency's lawfully delegated rule-making authority and, if questioned, that it was enacted in conformity with statutory rule-making procedures, there is no further inquiry.

## II.

Concluding that the County has standing to raise the issue, we turn our attention to whether Wis. Adm. Code Sec. PW-PA 20.15(6) is within the scope of the Department's lawfully delegated rule-making authority.

### (A)

Eligible dependent persons are entitled to general relief in Wisconsin under one of two basic administrative arrangements: Sec. 49.02(1), Stats.,[2] provides that municipalities (towns, cities, or villages) shall provide such

---

[2] "49.02 **Relief administration.** (1) Every municipality shall furnish relief only to all eligible dependent persons therein and shall establish or designate an official or agency to administer the same."

relief; and sec. 49.03,[3] establishes two optional programs whereby counties may, at their election, assume some or all of the responsibility for the provision of general relief. Counties in which relief is administered by municipalities are said to be on the "unit" system, and counties electing to provide relief directly to recipients, pursuant to sec. 49.03, are said to be on the "county" system.

With respect to a particular group of relief recipients, denominated "state dependents" in sec. 49.04(1), Stats.,[4] the state, rather than the local relief granting agencies, bears the ultimate cost of any assistance granted on a temporary basis as defined by sec. 49.01(7). In *State ex rel. Milwaukee County v. Schmidt*, 50 Wis.2d 303, 310–11, 184 N.W.2d 183 (1971), we explained:

"The underlying purpose of sec. 49.04, Stats., was to relieve counties of the added burden of relief to tran-

[3] "49.03  **Optional county systems.**  (1) The county board may, by a resolution adopted by an affirmative vote of a majority of all its members:

(a) Provide that the county shall bear the expense of maintaining all eligible dependents therein and thereupon the county shall relieve all eligible dependents in the county; and all powers conferred and duties imposed by this chapter upon municipalities shall be exercised and performed by the county, or

(b) Abolish all distinction between eligible county dependents and eligible municipal dependents as to medical, surgical, dental, hospital and nursing care and optometrical services; and have the entire expense of such care a county charge.

(2) The county board by a resolution adopted by an affirmative vote of majority of all its members may repeal any resolution adopted under sub. (1)."

[4] "49.04  **State dependents.**  (1) From the appropriation under s. 20.435(4)(e), the state shall reimburse the counties for such temporary assistance as may be needed pursuant to s. 49.01(7) for all dependent persons who do not have a settlement within any county in this state and who have resided in the state less than one year, but expenses for medical care shall be paid only in those cases in which application for benefits under ss. 49.46 and 49.47 has been made during the first 30-day period and ineligibility for such benefits has been established."

sients from outside the state as a result of the migrations following World War II by providing state reimbursement for aid given to persons who had no legal settlement within the state, and who had resided in the state for less than one year. It was intended that the counties or local units of government should remain primarily liable for the relief of persons whose need for relief could be fairly said to have arisen in the background of local conditions."

Under the provisions of sec. 49.04(1), a county can be reimbursed by the state for relief granted to state dependents within the county. For counties operating on the unit system, in which the relief-granting agency was a municipality, sec. 49.11(2)(c) provides for reimbursement from the county which, in turn, can seek reimbursement from the state.

Sec. PW-PA 20.15(6), the challenged rule, provides in essence that no county shall be reimbursed for relief paid to state dependents unless the county has adopted written standards for eligibility and amount of benefits which shall be applicable to all parts of the county. In addition, the rule states that, if the county adopts a standard for benefit levels which is less than that provided under the AFDC program, sec. 49.19, Stats., the county must file a statement explaining that the standard as adopted is reasonable and necessary to provide the relief described in sec. 49.01(1). Finally, the rule sets forth certain procedural safeguards which must be implemented with respect to any persons within the county whose applications for relief are denied.

The County, which operates on the unit system of general relief administration, argues that PW-PA 20.15 (6), by conditioning every county's entitlement to reimbursement upon its development of standards for benefit levels and eligibility, is inconsistent with the legislative preference expressed in secs. 49.01(1) and 49.02(1) and (2), for local relief administration. Specifically, the

County argues that under the statutes it could choose to remain uninvolved in relief administration but that the rule compels its participation. In addition, relying on *State ex rel. Tiner v. Milwaukee County,* 81 Wis.2d 277, 260 N.W.2d 393 (1977), the County argues that by requiring it to establish benefit standards keyed to AFDC benefit levels, the rule invades the absolute discretion of local welfare officials to determine the adequacy of relief granted. Because of these effects, the County submits that the rule exceeds the Department's rule-making authority.

## (B)

In considering whether an administrative agency exceeds its statutory authority in promulgating a particular rule, we are guided by the general rule that an administrative agency has only those powers as are expressly conferred upon it or which may be fairly implied from the statutes under which it operates, and as a consequence, it cannot promulgate any rule which is not expressly or impliedly authorized by the legislature. *Peterson v. Natural Resources Board,* 94 Wis.2d 587, 592–93, 288 N.W.2d 845 (1980). Both the circuit court and the court of appeals found express authority for PW-PA 20.15(6) in the language of sec. 49.04(2), Stats.,[5] which

---

[5] "49.04   **State dependents.**

". . .

"(2) The department shall make suitable rules and regulations governing the administration of temporary assistance under s. 49.-01(7) including the notification of reimbursement charges, the relief to be provided, the presentation of claims for reimbursement and other matters necessary to the provision of relief to such state dependent persons receiving temporary assistance. The observance of such rules and regulations by a county shall be a condition for reimbursement."

authorizes the Department to make "suitable rules and regulations governing the administration of" relief to state dependents. While this is on its face a broad grant of rule-making authority which appears to deal squarely with the matter in issue, the County argues that sec. 49.04(2) does not empower the Department to make rules which not only conflict with but totally supplant other statutory provisions, namely, the normal operation of the unit system prescribed by secs. 49.02(1) and (2).

We are not persuaded that the legislative preference for local or unit control of the administration of public assistance necessarily extends in all respects to the administration of relief to state dependents. While it is true that sec. 49.02(1), Stats., declares that municipalities "shall" furnish relief to all dependents and that secs. 49.02(2) and 49.03 describe optional or elective opportunities for county involvement, sec. 49.04(1) clearly envisions county involvement with respect to relief for state dependents. The County argues that under this section counties operate only as a conduit for state funds and that it cannot be taken as statutory authority for requiring any more than that.

This attempt to minimize the significance of the legislature's choice to provide reimbursement at the county level pales when sec. 49.04(1) is read together with sec. 49.04(2), Stats. In the latter subsection, the legislature expressly authorized the department to make rules concerning, among other things, "the relief to be provided, . . . and other matters necessary to the provision of relief to such state dependent persons receiving temporary assistance. The observance of such rules and regulations by a county shall be a condition for reimbursement." These provisions leave little doubt that where state dependents were concerned the legislature found it wiser and more preferable to make the counties, rather than local municipalities, the primarily responsible agency.

As with matters of public assistance generally, this choice is a legislative prerogative, and we will not question its wisdom.

Nor do we believe that PW-PA 20.15(6) improperly attempts to establish benefit levels (or force the County to do so) in contravention of the general discretion of local officials to do so under sec. 49.01(1), Stats. PW-PA 20.15(6)(a)2 states that [b]enefit standards so issued shall be reasonably adequate for health and decency . . . .," and PW-PA 20.15(6)(a)3 provides that "[i]f such standards adopted by a county establish a benefit level less than that provided for the AFDC program under s. 49.19(11), Stats., the county shall file a statement with the secretary of the department of health and social services containing detailed information demonstrating that the standard as adopted is reasonable and necessary to provide the items listed in s. 49.01(1), Stats." Neither of these provisions imposes a fixed or definite benefit level to be observed by a relief granting agency; in fact, by requiring no more than benefit levels "reasonably adequate for health and decency" and "reasonable and necessary," they merely echo the language of sec. 49.01(1). Despite the rule's suggestion that benefit levels equal to AFDC levels are presumptively adequate, it is obvious that levels below AFDC levels will be acceptable if they are "reasonable and necessary" for purposes of sec. 49.01(1). Requiring the county to explain or justify their adequacy is, we feel, well within the scope of the authority of the Department under sec. 49.04(2).

The County has voiced its concern that, because of its absolute duty to reimburse local units for relief paid to state dependents, it will be required to reimburse its local units even if those units fail to comply with its adopted standards. Therefore, the County fears that in order to insure its reimbursement by the state, it will have to

implement some type of policing or enforcement mechanism to make certain the units comply with its adopted standards. The Department proposes that the County simply refuse to reimburse units which do not meet county standards and thus force the municipalities to litigate the matter before the Department under the provisions of sec. 49.11(7), Stats.

While we are disinclined to engage in this sort of speculation over the possible impact of this rule, it bears mentioning that even if the worst of the County's fears are realized—that is, that it pays a municipality under sec. 49.11(2)(c), Stats., but is denied reimbursement by the state because the municipality did not comply with the County's adopted standards—we are not convinced that the result would be inconsistent with the legislature's choice in sec. 49.04 to impose upon counties the responsibility for overseeing the administration of relief for state dependents.

We conclude, therefore, that PW-PA 20.15(6) is well within the scope of rule-making authority delegated to the Department under sec. 49.04(2), Stats., and that, as applied, the rule does not conflict with any other provisions of the public assistance statutes. Having so concluded, this line of inquiry is terminated, since we have already stated that the County will not be heard to question the wisdom or reasonableness of an otherwise valid administrative rule.

(C)

The County also argues that the rule is unlawful because it conflicts with a federal court decision in *Perez v. Carballo,* No. 75-C-431 (E.D. Wis. Nov. 2, 1977). The first part of this argument is that the rule itself conflicts with language in that opinion to the effect that the

Department may not have authority to promulgate such a rule, and the second part is that, because the Department agreed to propose PW-PA 20.15(6) as a part of a stipulation for the dismissal of an appeal of the *Perez* case, the Department's motive for enacting the rule was improper.

*Perez* was a migrant worker who was denied state dependent relief by the Waushara County Department of Social Services. He brought a federal action against the secretary of the Wisconsin Department of Health and Social Services and others, arguing that the Department's failure to enact procedural safeguards respecting the denial of state dependent relief benefits, as well as rules governing eligibility and benefit standards, constituted a due process violation, as well as a violation of sec. 49.04, Stats. In granting the secretary's motion for summary judgment the district court stated:

"Such a requirement would be contrary to the legislative purpose and intent in establishing the general relief program." (Slip Opinion at 5.)

Because the *Perez* holding was that the Department was neither constitutionally nor statutorily required to enact such standards, we view the above-quoted language to be a gratuitous observation, not a studied judicial interpretation. And in any event, we are not bound by that court's interpretation of state statutes. As for the second part of the County's argument, we will not inquire into the motive behind an administrative decision to promulgate a rule. As we stated in *Peterson v. Natural Resources Board,* "[o]n review of acts 'which are legislative in their character,' ' "[judicial] inquiry is *limited to the question of power,* and does not extend to the matter of expediency, the motive of the legislators, or the reasons which are spread before them to induce the passage of the

act." ' " (Emphasis in original.) 94 Wis.2d at 599. Accordingly, we reject the County's arguments that the rule is invalid under *Perez*.

## III.

The County's final contention is that the Department failed in promulgating PW-PA 20.15(6) to comply with the procedural rule-making requirements of Chapter 227, Stats. The following notice appeared at page 6 in the *Wisconsin Administrative Register,* No. 267 (March, 1978) :

## NOTICE OF HEARING

### Health and Social Services

#### (Public Welfare)

NOTICE IS HEREBY GIVEN That pursuant to sections 46.03(8), 49.04(2) and 227.014(2), Wis. Stats., the Department of Health and Social Services will hold a public hearing at the State Capitol Building, Room 321 NE in the city of Madison, Wisconsin, on the 11th day of April, 1978 at 9:30 a.m. to consider the adoption of rules requiring counties and municipalities to establish certain procedures and standards in order to obtain reimbursement for temporary assistance (general relief) granted to state dependents under s. 49.04(1), Wis. Stats. A copy of the rules ·to be considered may be obtained upon request from the Office of the Secretary, Room 663, One West Wilson Street, Madison, Wisconsin 53702, after April 1, 1978.

A public hearing on the proposed rule was held on April 11, 1978. Following the hearing, certain changes were made, and the final rule was published in the *Wisconsin Administrative Register* in July, 1978. Due to the insufficiency of the record in this case, the original version

of the proposed rule is not before us. However, for purposes of this review, we will assume that the material included in the statement of facts in the County's brief is accurate, and we reproduce the County's characterization of the rule with the original language and subsequent changes from page 8 of its brief:

"PW-PA 20.15(6)(a) No reimbursement for relief granted to state dependents as defined in §49.04(1). Wis. Stats. shall be provided to counties unless the County ~~administering said relief program~~ *claiming reimbursement for such relief* has adopted written standards *which apply to all parts of the county* relative to the eligibility for and amount of relief granted.

"PW-PA 20.15(6)(b) No reimbursement for relief granted to state dependents under §49.04(1) Wis. Stats., shall be provided to counties unless the county ~~administering said relief program~~ *claiming reimbursement for such relief* makes provision for the following procedural safeguards *which apply to all parts of the county* for all persons ~~for whom reimbursement is sought~~ whose applications are denied in whole or in part."

The County argues that before these changes were made the rule arguably did not apply to counties operating on the unit system, while after the changes the rule clearly applied to all counties and that because the changes took place after the public hearing, the County was denied notice and an opportunity to be heard.

In *HM Distributors of Milwaukee v. Dept. of Agriculture,* 55 Wis.2d 261, 268–69, 198 N.W.2d 598 (1972), we stated:

"The purpose of a public hearing is to give interested parties not only a chance to be heard, but to have an influence in the final form of the regulations involved. That purpose would not be served if the adopted rules were required to be identical in form to those proposed before the hearing. A question of the need for an addi-

tional hearing might well arise where the rules as adopted bore little resemblance to the rules as proposed. Here, where the rules as proposed vary from the rules as adopted only in details of wording and where the scheme prohibited was identical in both, we see no basis for complaint, much less for successful challenge."

The question becomes whether the changes in PW-PA 20.15(6) reflect the Department's legitimate implementation of the input of the first hearing, or whether the final version so far differs from the proposed version that the first hearing could not be said to have offered an opportunity for interested parties to influence the final outcome.

We do not believe the changes required another hearing. The first notice in the March, 1978, *Wisconsin Administrative Register* indicated that the hearing would pertain to rules "requiring counties and municipalities to establish certain procedures and standards" for state dependent reimbursement. The scope of the notice was broad enough to alert the County that its interests might be affected. The proposed rule was a part of PW-PA sec. 20.15, "Reimbursement for state dependents," every other part of which appears to apply to all counties, not just those on the county system for the administration of general assistance. Moreover, the proposed rule, in referring to "the county administering said relief program," did not mean, in our view, only those counties which were administering the entire general relief program under sec. 49.02(2) or sec. 49.03, Stats. Rather, we are satisfied that the rule as proposed encompassed the entire state dependent program and that the words "administering said program" referred to the county involvement necessary under sec. 49.01(1) and (2). The change merely clarified the intended scope of the rule and avoided the ambiguity which the County here advances. Because we conclude the change in the wording

of the rule did not so alter the original scope of the proposed rule as to require a second public hearing, we cannot invalidate the rule on procedural grounds.

*By the Court.*—The decision of the court of appeals is affirmed.