CLARKE SMITH, Secretary, The Regents of the University ofWisconsin System
The Ad Hoc Organization Committee of the Board of Regents of the University of Wisconsin system has requested my opinion as to the legality of the deferred salary plan between the University of Wisconsin and President John C. Weaver as set forth by resolution dated June 18, 1971. Such resolution reads as follows:
"That the Board of Regents of the University of Wisconsin, in accordance with the informal understanding at the time that President John C. Weaver was appointed, provide President Weaver with a deferred salary plan, subject to the provisions of sec.20.903 Wisconsin Revised Statutes, as follows:
1. For each of the first 5 years of service as President of the University of Wisconsin, 6% of his average salary for the last 3 years as President.
2. For each of the second 5 years of service as President of the University of Wisconsin, 4% of his average salary for the last 3 years. *Page 7 
3. This deferred salary would be paid annually during President Weaver's lifetime provided his service as President reaches a minimum of 3 years. If he leaves the University any time after serving as President for 3 years, the deferred salary would be paid annually during lifetime as a deferred salary. If he leaves involuntarily prior to the 3-year minimum, he will be provided a lump sum settlement representing the then cash value of the then accrued deferred salary earned.
4. At such time as the deferred salary becomes payable in accordance with paragraphs 1, 2, and 3, he shall have the choice of accepting the deferred salary payments in a manner similar to the options available under the Wisconsin Teachers Retirement System."
The basic question is whether the Regents have authority to implement such a deferred salary plan.
Section 36.06 (1), Stats., reads in part:
"36.06 Duties of regents; additional powers. (1) The board of regents shall enact laws for the government of the university in all its branches; elect a president and the requisite number of professors, instructors, officers and employes, and fix the salaries and the term of office of each, * * *"
State agencies have only such powers as are expressly granted by statute or necessarily implied as incidental to carrying out the duties and powers expressed in the statutes. Any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds. American Brass Co. v. StateBoard of Health (1944), 245 Wis. 440, 15 N.W.2d 27; The State exrel. Priest v. The Regents of the University of Wisconsin (1882),54 Wis. 159, 11 N.W. 472. I am informed that Mr. Weaver is a member of the State Teachers Retirement System (STRS) formula group and that the required deposits as set forth in sec. 42.40, Stats., are forwarded by the University to the STRS. I am aware of no section of the statutes which authorizes a deferred salary plan for a state employe other than the tax-shelter annuity plan of 26 U.S.C.A. sec. 403 (b) available to teachers, which is implemented through the "additional deposits" provision of sec. 42.40 (3), Stats. I am informed, however, that Mr. Weaver has already filed an agreement under the requirements of 26 U.S. *Page 8 
C.A. sec. 403 (b) to have the maximum amount set aside from his salary and forwarded to the STRS to purchase a tax-deferred annuity in his behalf.
It appears that the subject deferred salary plan is intended to be a retirement plan paying, should Mr. Weaver stay 10 years, 50 percent of his average salary for the last three years of his employment with "the choice of accepting the deferred salary payments in a manner similar to the options available under the Wisconsin Teachers Retirement System." The STRS has no authority to implement such a deferred salary plan or to substitute it for the mandatory teachers' retirement plan set forth in ch. 42, Stats.
The term "salaries" as used in sec. 36.06 (1), Stats., could arguably be construed to be synonymous with compensation and, therefore, be held to authorize the Regents to institute a deferred salary plan. The fault with this is the apparent intent of the legislature that all state employes, outside of Milwaukee, belong to either the STRS or the Wisconsin Retirement Fund (WRF). The individual funds such as the Conservation Wardens Fund and the old State Retirement System are closed and being phased out of existence. While I find no court case specifically prohibiting a retirement agreement such as the one under consideration here, the legislature has in recent sessions limited retirement plans to the STRS and WRF. With this background it would be difficult to sustain an interpretation of sec. 36.06 (1), Stats., to allow a special retirement plan under definition of the word "earnings" or as a necessary implied power. Should the power given in sec. 36.06 (1), Stats., be deemed to authorize the Regents to institute such a retirement plan then the plan could equally be extended, in the words of sec. 36.06 (1), Stats., to all "professors, instructors, officers and employes" of the University, even though such persons are required to be participants of STRS, if teachers, or WRF if non-teachers. This is apparently contrary to the intent of the legislature in creating the retirement plans of chs. 41 and 42, Stats. It is, therefore, my opinion that the Board has no authority to create such a deferred salary plan since the authority therefor is not actually or impliedly provided for by sec. 36.06 (1), Stats. *Page 9 
In conclusion, I see no basis for construing sec. 36.06 (1), Stats., to impliedly authorize the Board to provide a deferred salary plan. The intent of the legislature in recent times has clearly been to provide only two retirement plans, the State Teachers Retirement System and the Wisconsin Retirement Fund. All state employes must mandatorily belong to one of these plans. I am confident that the legislature, by requiring that all state employes belong to one of the two systems, did not intend to allow state agencies the leeway of establishing additional retirement plans.
RWW:WMS