77 Wis.2d 126 (1977)
252 N.W.2d 353
STATE (DEPARTMENT OF ADMINISTRATION), and others, Appellants,
v.
DEPARTMENT OF INDUSTRY, LABOR AND HUMAN RELATIONS, and another, Respondents.
No. 76-017.
Supreme Court of Wisconsin.
Argued March 3, 1977.
Decided April 19, 1977.
*132 For the State of Wisconsin (Department of Administration) and University of Wisconsin-Madison there were briefs by Gilda B. Shellow, James R. Glover and Shellow & Shellow of Milwaukee, and oral argument by Gilda B. Shellow and James R. Glover.
*133 A joint brief was filed for John T. Patzer and Madison Building Trades Council by Richard V. Graylow, Robert J. Arnot and Lawton & Cates, all of Madison; and for Department of Industry, Labor and Human Relations by Bronson C. La Follette, attorney general, and Gordon Samuelsen, assistant attorney general, with oral argument by Gordon Samuelsen and Richard V. Graylow.
A brief amici curiae for the Committee on Academic Non-Discrimination and Integrity and the Mid-America Legal Foundation was filed by John W. Finley, Jr., and Brashich, and Finley, attorneys and Michael Blinick, John Cannon and Leonard J. Theberge, of counsel, all of New York.
HANLEY, J.
The following issues are properly before this court upon appeal:
1. Was the promulgation of PERS 27 a valid exercise of power properly delegated by the legislature?
2. Does the limited hiring policy, as authorized by PERS 27, constitute discrimination in violation of the Wisconsin Fair Employment Act?
3. Does the limited hiring policy, as authorized by PERS 27 constitute discrimination in violation of Title VII of the Civil Rights Act of 1964?
4. Does the limited hiring policy, as authorized by PERS 27, constitute a denial of equal protection of the laws?
Delegation and Exercise of Legislative Power
The appellants contend PERS 27, authorizing the utilization of limited eligibility lists, is the exercise of administrative authority delegated by the legislature in sec. 16.08 (7). To be valid, it is necessary that the limited hiring policy (1) be based upon a proper delegation of power by the legislature and (2) not constitute *134 administrative action in excess of the statutorily conferred authority.
[1]
In determining whether the legislature has properly delegated its power to an agency, this court applies the following rule:
"`A delegation of legislative power to a subordinate agency will be upheld if the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or agency acts within that legislative purpose.'" Westring v. James, 71 Wis. 2d 462, 468, 238 N.W.2d 695 (1976), quoting Watchmaking Examining Board v. Husar, 49 Wis.2d 526, 536, 182 N.W.2d 257 (1971).
[2]
Under sec. 16.03, Stats., the legislature has charged the Director of the Bureau of Personnel with the responsibility for the effective administration of the civil service and the authority to promulgate rules to carry out that responsibility. The general purpose and policy of the civil service is stated in sec. 16.01, Stats.
"16.01 Statement of policy. (1) It is the purpose of this subchapter to provide state agencies and institutions of higher education with competent personnel which will furnish state services to its citizens as fairly, efficiently and effectively as possible.
"(2) It is the policy of the state to maintain a strong coordinated personnel management program and to assure that postions in the classified service are filled through methods which apply the merit principle, with adequate civil service safeguards. To these ends the bureau of personnel with advice and quasi-judicial assistance by the personnel board shall develop, improve and protect a state-wide personnel management program which assures that the state hires the best qualified persons available and bases the treatment of its employes upon the relative value of each employe's services and his demonstrated competence and fitness."
Thus, the basic purpose of the legislature's delegation is clearthe Director is to establish a system which tests *135 the ability of applicants for particular jobs so that the most qualified are employed.
The legislature has also, however, in sec. 16.08 (7), Stats., provided for exceptional methods, evidently deviating from the strict merit principle, to be adopted by the Director. This section requires the Director to provide for exceptional employment situations such as to employ the mentally and physically handicapped and the disadvantaged.
The legislature's purpose in enacting sec. 16.08 (7) is obvious. It is clearly intended that the state, through the civil service, use its hiring power to provide jobs for those persons who are occupationally disadvantaged, in that, due to factors beyond their control, they cannot effectively compete for employment based upon strict merit principles. Consequently, "exceptional methods and kinds of employment" are authorized.
[3]
It is clear that sec. 16.08 (7), in light of its general terms, constitutes a broad grant of legislative authority. This court, however, has emphasized that broad grants of legislative powers will be permitted where there are procedural and judicial safeguards against arbitrary, unreasonable or oppressive conduct of the agency. Schmidt v. Department of Local Affairs and Development, 39 Wis.2d 46, 158 N.W.2d 306 (1968); See also Westring v. James, supra.
The Director's rule-making authority is attended by the procedural safeguards under the Administrative Procedure Act, ch. 227, Stats., requiring public hearings, and the validity of such rules may be challenged in the courts under sec. 227.05, Stats.
We think, that the legislature has sufficiently, although generally, stated its purpose of sec. 16.08 (7), and therefore the legislature's delegation of power is valid, for the power conferred upon the Director is limited by procedural safeguards and review by the courts under the Administrative Procedure Act.
*136 [4, 5]
Whether the enactment of PERS 27, authorizing the utilization of this limited hiring policy, exceeds the delegation of power conferred by the legislature is the next question to be considered. It is the general rule that an administrative agency has only those powers which are expressly conferred or which are fairly implied from the four corners of the statute under which it operates. Racine Fire & Police Comm. v. Stanfield, 70 Wis.2d 395, 399, 234 N.W.2d 307 (1975); Wisconsin Environmental Decade, Inc. v. Public Service Commission, 69 Wis.2d 1, 16, 230 N.W.2d 243 (1975). Therefore, no agency may issue a rule that is not expressly or impliedly authorized by the legislature. Kachian v. Optometry Examining Board, 44 Wis.2d 1, 8, 170 N.W.2d 743 (1969).
Nowhere in sec. 16.08 (7) is there authority for the declaration of policy made in PERS 27 regarding extraordinary employment of minorities and women in order to correct past alleged evils of discrimination. Since sec. 16.08 (7) merely authorizes "exceptional methods" to employ the "disadvantaged," the establishment of the limited eligibility lists which deprive persons of the right to apply for civil service positions on the basis of race or sex cannot be said to be expressly authorized by the statute.
[6]
Thus, is the power to establish such an exclusive hiring procedure fairly implied from the express statutory grant within the four corners of the statute? This court has recognized the rule that any reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority. State ex rel. Farrell v. Schubert, 52 Wis.2d 351, 358, 190 N.W.2d 529 (1971). We are satisfied that such doubt exists in this situation, and therefore this power is not so implied.
*137 A delegation of the power to impose absolute preferences in civil service employment to persons based solely upon race or sex may not be fairly implied solely from the particular language used by the legislature. The words "exceptional methods" do not necessarily imply absolute preferences, and the word "disadvantaged" does not necessarily imply those persons who are of a particular sex or race which is under represented in an employment unit. Whether one is occupationally disadvantaged does not, in every case, depend upon that person's race or sex.
The appellants, however, contend that absolute preferences in favor of women and minority group members is the only realistic and effective method of carrying out the purpose of sec. 16.08 (7) to employ the "disadvantaged," and, therefore, such preferences are fairly implied from the statute. Absolute preferences are necessary, appellants claim, because of the following factors (1) women and minority group members are reluctant to apply for positions because of their previous systematic exclusion from the classified crafts; (2) there exists a possibility that employment screening procedures would disproportionately exclude qualified women and minority group members; (3) the classified crafts is a non-expanding employment unit with a low turnover rate; and (4) previously laid-off crafts workers, all white males, are preferred for crafts vacancies.
The two last mentioned factors only relate to the number of positions available, and while they may restrict the opportunity to consider female and minority applicants, these factors do not necessarily require the use of absolute preferences to fill those positions which are open to recruitment with qualified women or minority group members.
The first and second factors, the reluctance of women and minority group members to apply for these jobs and discriminatory screening procedures, also do not *138 establish that absolute preferences are the only effective methods to achieve the legislature's purpose in sec. 16.08 (7). On the contrary, rigorous recruiting of female and minority applicants, provision for special training programs, and development of non-discriminatory screening procedures are clear alternatives. In regard to establishment of non-discriminatory screening procedures, efforts could certainly be made to eliminate any subtle discriminating forces in conventional testing. It is not unusual that such testing may be oriented to reflect the attributes of the average applicant, and thus, if the testing touches upon cultural backgrounds, it may not take into account cultural differences between the average applicants and women or minority group members. Similarly, more individualized screening procedures would be able to better gauge an applicant's character by taking into consideration, for example, that while a particular minority applicant may not have as much experience as a white male applicant, the minority applicant has been forced to operate against numerous social obstacles, and thus shows greater determination. This sort of consideration could also be significant in the case of a female applicant, especially in the building trades field.
We do not think that a delegation of power to implement absolute preferences based on race or sex is necessarily implied, as the appellants contend, for the reason that such preferences are the only realistic and effective method of carrying out the legislature's purpose.
Not only is a legislative grant of power to implement absolute preferences not necessarily implied, neither is such a grant of power fairly implied. Other statutory statements cast significant doubt upon the view that the legislature impliedly authorized absolute preferences, and also the drastic nature of absolute preferences would indicate that had the legislature intended to grant the power for their implementation, it would not have done so in such an indefinite manner.
*139 The Wisconsin Statutes are replete with requirements that civil service employment depend only upon an individual's merits and with prohibitions against discrimination based on race or sec. Members of the Personnel Board are held to an appreciation of the application of merit principles in public employment. Sec. 15.105 (3), Stats. Under sec. 16.01, quoted above, which states the policy of civil service, positions in the service are to be filled with the best qualified individuals based upon the merit principle. Sec. 16.11, Stats., requires that appointments to and promotions in the classified service are to be made only according to merit and fitness which shall be ascertained so far as practicable by competitive examination.
The appellants contend that sec. 16.14, as amended in Laws of 1971, ch. 270, sec. 41 implies that absolute preferences are authorized. The pertinent portion of that section states
"No discrimination shall be exercised in the recruitment, application or hiring process against or in favor of any person because of his political or religious opinions or affiliations or because of his age, sex, handicap, race, color, national origin or ancestry except as otherwise provided."
Prior to the amendment, sec. 16.14 merely prohibited discrimination against or in favor of any person based upon that person's political or religious opinions or affiliations. Appellants contend the language "except as otherwise provided" is an expression by the legislature, in that this amendment was made in the same law which created sec. 16.08 (7), that absolute preferences based on race or sex are not excluded. The action of the legislature in amending sec. 16.14 in this context is ambiguous. The legislature's amendment not only added the language referred to by the appellants, but also included the factors "age, sex, handicap, race, color, national origin or ancestry" *140 to those discriminated upon which is prohibited. It is not clear whether the language "except as otherwise provided" was intended to apply to discrimination based upon any of the mentioned factors or solely, for example, to discrimination based upon age or handicap, factors for which the exception to the blanket prohibition of discrimination would most likely be desired. In any event, this does not amount to a fair implication of a grant of power to impose absolute preferences.
Very significantly, the legislature has prohibited administrative rules which discriminate for or against any person by reason of that person's race, creed, color, national origin or ancestry. Sec. 227.033, Stats. Moreover, recently in Laws of 1975, ch. 94, sec. 71, the legislature added sex to this list of factors upon which no administrative rule may discriminate. The legislative grant of authority which the appellants claim is implied by sec. 16.08 (7) would clearly be in direct conflict with the statement in sec. 227.033.
[7]
We conclude a grant of power to implement absolute preferences based upon sex or race is not implied by the language of sec. 16.08 (7) or because the appellants claim such preferences are the only feasible method to accomplish the legislative purpose. Furthermore, other statutes contain statements which are clearly not consistent with the grant of such a power, and therefore there is at minimum a reasonable doubt of the existence of implied power to implement the drastic procedures of absolute preferences. Where such a reasonable doubt exists, that doubt must be resolved against the implied grant. Therefore, the power to utilize absolute preferences is not granted to the Director of the Personnel Board. Insofar as PERS 27 authorizes the establishment of employment lists which constitute absolute preferences based upon sex or race, it is void ab initio. State ex rel. Farrell v. Schubert, supra at 359. Accordingly, PERS 27, upon *141 which the appellants rely, is not valid authority for the exclusion of Patzer solely because of his race or sex.
In light of the above conclusion, we do not reach the remaining issues.
By the Court. Judgment affirmed.
ABRAHAMSON, J., took no part.