ED JACKAMONIS, Speaker, State Assembly
On behalf of the Committee on Assembly Organization you request my opinion on three questions relating to, in your words, "the deferred salary plan and supplemental retirement benefits granted to former University of Wisconsin President John Weaver." The questions will be answered seriatim.
 1. Did the Board of Regents of the University of Wisconsin System have the authority to enter into an agreement with Mr. Weaver to provide a deferred salary plan under the Wis. Statutes then in effect (1970)?
By resolution dated June 18, 1971, the Board of Regents of the University of Wisconsin (hereinafter Board) provided the following deferred compensation or retirement plan for then University President Weaver. The resolution reads:
 "That the Board of Regents of the University of Wisconsin, in accordance with the informal understanding at the time that President John C. Weaver was appointed, provide President Weaver with a deferred salary plan, subject to the provisions of sec. 20.903 Wisconsin Revised Statutes, as follows:
 1. For each of the first 5 years of service as President of the University of Wisconsin, 6% of his average salary for the last 3 years as President. *Page 267 
 2. For each of the second 5 years of service as President of the University of Wisconsin, 4% of his average salary for the last 3 years.
 3. This deferred salary would be paid annually during President Weaver's lifetime provided his service as President reaches a minimum of 3 years. If he leaves the University any time after serving as President for 3 years, the deferred salary would be paid annually during lifetime as a deferred salary. If he leaves involuntarily prior to the 3-year minimum, he will be provided a lump sum settlement representing the then cash value of the then accrued deferred salary earned.
 4. At such time as the deferred salary becomes payable in accordance with paragraphs 1, 2, and 3, he shall have the choice of accepting the deferred salary payments in a manner similar to the options available under the Wisconsin Teachers Retirement System."
Section 20.903 (1), Stats. (1969), referred to in the first paragraph of the resolution, reads in material part:
 LIABILITIES CREATED ONLY BY AUTHORITY OF LAW. It is unlawful for any state agency, or any officer or employe thereof, to contract or create, either directly or indirectly, any debt or liability against the state for or on account of any state agency, for any purpose whatever, without authority of law therefor, or prior to an appropriation of money by the state to pay the same, or in excess of an appropriation of money by the state to pay the same. Unless otherwise empowered by law, it is unlawful for any state agency to authorize, direct or approve the diversion, use or expenditure, directly or indirectly, of any funds, money or property belonging to, or appropriated or set aside by law for a specific use, to or for any other purpose or object than that for which the same has been or may be so set apart.
Section 36.06 (1), Stats. (1969), authorizes the Board to establish the President's salary: "The board of regents shall . . . elect a president and the requisite number of professors, instructors, officers and employes, and fix the salaries and the term of office of each." *Page 268 
Section 20.923 (3), Stats. (1969), further provides, in part, as to the authority of the Board:
 (3) Salaries for the following positions may be set by the appointing authority, subject to the restrictions otherwise set forth in the statutes:
. . . .
 (j) University of Wisconsin, state universities: all presidents . . . .
It is my opinion, based upon the statutory sections quoted above, that the Board lacked the authority to enter into an agreement with Dr. Weaver to provide a deferred salary or retirement plan. The same conclusion was reached by a previous Attorney General in an opinion dated January 6, 1972, reported at 61 Op. Att'y Gen. 6 (1972). That opinion was directed to the Regents of the University of Wisconsin System and undoubtedly was within the personal knowledge of then President Weaver.
Administrative boards have no common law power. As stated inState (Dept. of Admin.) v. ILHR Dept., 77 Wis.2d 126, 136,252 N.W.2d 353 (1977):
 It is the general rule that an administrative agency has only those powers which are expressly conferred or which are fairly implied from the four corners of the statute under which it operates.
. . . .
 . . . This court has recognized the rule that any reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority.
See also Village of Silver Lake v. Department of Revenue,87 Wis.2d 463, 468, 275 N.W.2d 119 (Ct.App. 1978) and State ex rel.Farrell v. Schubert, 52 Wis.2d 351, 358, 190 N.W.2d 529 (1971).
Both secs. 36.06 (1) and 20.923 (3), Stats. (1969), authorize the Board to set the salary of the University President. Does the term *Page 269 
"salary" then include the right to provide a deferred compensation or other retirement plan? In my opinion it does not.
"Salary" is defined in Webster's Third International Dictionary
2003 (1976), in part as "1: fixed compensation paid regularly (as by the year, quarter, month, or week) for services: STIPEND; esp: such compensation paid to the holders of official, executive or clerical positions." The same dictionary defines "compensation," at 463, in part as "2d: payment for value received or service rendered." The terms "compensation" and "salary" have been interpreted as synonymous both in respect to constitutional language relating to compensation for services of public officers and judges while in office, and statutory language dealing with the amount of benefits available under the sec. 62.13 (9)(a), Stats. (1977), policemen's pension fund. State ex rel. Manitowocv. Police Pension Bd., 56 Wis.2d 602, 610-12a, 203 N.W.2d 74
(1973). Since the meaning of "salary" cannot be gleaned from the two authorizing statutes, secs. 36.06 (1) and 20.923 (3), Stats. (1969), themselves, we must look to the other statutes bearing upon the compensation available to a university president in 1971.
The Legislature has included the office of president of the University in the State Teachers Retirement System (STRS). See
sec. 42.20 (20), (21)(a) and (22), Stats. It therefore can hardly be argued that the grant of authority in sec. 36.06 (1), Stats. (1969), to set the president's "salary" carries with it the necessary implication to provide another retirement plan. The authority to provide a deferred compensation or retirement plan other than the STRS is not specifically granted nor necessarily implied in sec. 36.06 (1), Stats. (1969). Thus under the general rule set forth in State (Dept. of Admin.) v. ILHR Dept.,77 Wis.2d at 136 "any reasonable doubt of the existence of an implied power of an administrative agency should be resolved against the exercise of such authority."
Moreover, a non-STRS retirement or deferred compensation plan would be inconsistent with sec. 42.44, Stats. (1969), which states:
 Notwithstanding any other law, rule or regulation affecting the salary, pay, compensation or tenure of any member, payment of such salary, pay or compensation to such member less the required deductions herein provided shall be a full and complete *Page 270 
discharge and acquittance of all claims for service rendered by such member during the period covered by such payment.
This section contemplates that the periodic payment of "salary" or "compensation" less the "required deductions" for STRS participation constitutes full payment for services rendered. The Legislature has therein effectively negated any claim for a non-STRS retirement or deferred compensation benefit.
Dr. Weaver, as a member of the STRS, is therefore eligible for the tax-shelter annuity plan of 26 U.S.C. § 403 (b) which is implemented through the "additional deposits" provision of sec. 42.40 (3), Stats. I am informed that Dr. Weaver, during his employment, filed an agreement under the provisions of 26 U.S.C. § 403
(b) to have the maximum allowable amount set aside from his salary to purchase a tax-deferred annuity on his behalf. Note sec.36.11 (15), Stats., which authorizes the Regents of the University of Wisconsin System to continue existing salary reduction agreements and enter into new salary reduction agreements under the requirements of 26 U.S.C. § 403 (b).
A search of ch. 42, Stats., dealing with the STRS, for requisite authority to provide a deferred salary plan (except under 26 U.S.C. § 403 (b)) is fruitless. For while such chapter cannot be said to be entirely devoid of ambiguity, if for no other reason than due to length and intricacy, it was designed to effect the singular purpose of establishment of a uniform retirement system for state teachers (including administrators). The apparent intent of the Legislature is to provide state retirement benefits through the STRS. I find no showing of legislative intent to allow any state agency to implement or establish any other supplementary retirement plan or system. Section 20.921, Stats., specifies the purposes for which a voluntary deduction may be made from the salary of a state employe. There is therein no category listed which would cover the tax-deferred annuity payment at issue here. While it could be argued that the tax-deferred annuity plan does not present a salary deduction situation, the legislative intent to provide for little diversity in deductions is clear.
 2. Does the Board of Regents of the University of Wisconsin System or any other state agency have authority to provide *Page 271 
a deferred salary plan to Mr. John Weaver under Wis. Statutes now in effect?
Dr. Weaver is no longer President of the University. I am informed that his last day on the University payroll was August 31, 1977. Therefore, any authority in the Regents to implement a deferred salary plan to Dr. Weaver necessarily depends on the authority of the Board to provide such a plan while he was employed as University President. As I have concluded in response to your first question, the Board lacked that authority.
Consequently, I construe the intent of your second question to ask whether, under the statutes as they exist today, there is authority to provide a deferred compensation plan for the President of the University of Wisconsin System. I find no authority to provide such a deferred compensation or supplemental retirement plan in the statutes as they exist today.
Section 36.09 (1)(j), Stats., now provides:
 The board shall establish salaries for persons not in the classified staff prior to July 1 of each year for the next fiscal year, and shall designate the effective dates for payment of the new salaries. In the first year of the biennium, payments of the salaries established for the preceding year shall be continued until the biennial budget bill is enacted. If the budget is enacted after July 1, payments shall be made following enactment of the budget to satisfy the obligations incurred on the effective dates, as designated by the board, for the new salaries, subject only to the appropriation of funds by the legislature and s. 20.865 (6). This paragraph shall not limit the authority of the board to establish salaries for new appointments.
In addition sec. 20.923 (4)(j), Stats., assigns the position of President of the University of Wisconsin System to executive salary group 10 with the following limitation on the Board's salary-setting powers set forth at sec. 20.923 (1), Stats.:
 The salary-setting authority of individual boards, commissions, elective and appointive officials elsewhere provided by law is subject to and limited by this section, and the salary rate for these positions upon appointment and subsequent thereto *Page 272 
shall be set by the appointing authority pursuant to this section, unless the position is subject to article IV, section 26 of the state constitution.
I see nothing in the present quoted statutes that changes the basis for my answer to question 1, namely that the term "salary," as used, does not include a deferred compensation or retirement plan. Thus I find no authority in the Board under existing statutes to implement a deferred compensation plan other than that authorized by sec. 36.11 (15), Stats.
 3. Would any legislation introduced during the 1981 session to provide a deferred salary plan to Mr. John C. Weaver be restricted or prohibited by Article IV, Section 26 of the Wis. State Constitution?
Wisconsin Constitution art. IV, sec. 26, states in part:
 The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office . . . . This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits.
It is my opinion that the Legislature is prohibited by Wis. Const. art. IV, sec. 26, from providing a deferred salary plan to Dr. Weaver.
Wisconsin Constitution art. IV, sec. 26, though prohibiting an increase in compensation, does allow the Legislature to increase "benefits for persons who have been or shall be granted benefits of any kind under a retirement system." This language indicates that the legislative authority granted notwithstanding the general prohibition against raising compensation is limited to increasing the benefits under an existing retirement system. The authority granted does not *Page 273 
include establishment of a deferred salary plan not part of a retirement system properly existing during the subject person's period of employment. That this grant of authority to augment existing retirement systems was intended to be so limited appears from 1973 Senate Joint Resolution 15, the basis for the amendment. Joint Resolution 15 stated the ratification question to be:
 Shall section 26 of Article IV of the constitution be amended to permit the legislature to increase the pensions of persons who already have retired under any public retirement system (such retirement benefits already may be granted to teachers), and to require the state to provide sufficient state funds to cover the costs of the increased benefits to all persons retired under a public retirement fund.
The Report of the Joint Survey Committee on Retirement Systems printed as an appendix to 1973 Senate Joint Resolution 15 also indicates that the legislative power granted was to augment existing system benefits. The report states as follows at 2:
 The present law allows the adjustment of a retirement pension received by a retired teacher under a teacher's retirement system within the state. However, it precludes such an adjustment being made for retired members of all other public retirement systems, excepting federal, the Milwaukee City Employees Retirement system and the Milwaukee County Employees Retirement system, located within the state.
 Many retirement systems throughout the United States have adopted provisions allowing the pensions of their retired members to be periodically adjusted. They are properly funded and, in many cases, tied to the Cost of Living Index. Such a provision has been under consideration recently in Wisconsin but implementation will not be possible unless this Joint Resolution is enacted. The former governor indicated an interest in this matter by including it in his policy statement in his 1967-69 Executive Budget.
 It hardly seems equitable that retired members of all teacher retirement systems within the state are granted this benefit while, at the same time, the retired members of all other public retirement systems, excluding federal, are denied them. *Page 274 
It is thus my opinion that the Legislature is limited in its pension-adjustment authority to increasing benefits of participants in retirement systems who were members of such systems while employed.
It must be here noted, however, that the prohibition of Wis. Const. art. IV, sec. 26 is against payment of "extra compensation" — not a prohibition against proper payment for services after they are performed. This distinction is discussed in Department of Administration v. WERC, 90 Wis.2d 426, 431,280 N.W.2d 150 (1979), in these words of the supreme court:
 The constitutional provision here under consideration does not prohibit payment of wages after services have been performed. In fact, as we understand it, most all state payroll payments are made after the work is performed. The issue is what constitutes extra compensation. This court first considered this question in State ex rel. Dudgeon v. Levitan, 181 Wis. 326, 193 N.W. 499 (1923), where the question was whether a teacher's annuity could include funds attributable to years of service prior to the enactment of the annuity plan. This court held that such funds were not intended as compensation for past years of service, but rather represented an attempt to induce experienced teachers to continue to work.
 We recognize that the retroactive wage increase sought here would constitute compensation for services that had already been performed. However, as previously stated, the issue is whether such payments constitute extra compensation within the prohibition of the Constitution.
1981 Senate Bill 418, introduced by request of the State Claims Board if enacted would provide for future payments to Dr. Weaver based upon the June 18, 1971 resolution of the Board. This bill resulted from a claims board hearing on February 16, 1981. I take notice that a letter dated June 6, 1980 from Herbert J. Grover, as President of the Board of Regents, to the Claims Board is a part of the hearing record. This letter states as follows:
 The Board of Regents of the University of Wisconsin System has reviewed the claim of John C. Weaver, dated February 28, 1980. *Page 275 
 The Board of Regents supports the recognition of the claim as providing a proper means of fulfilling the firm commitment made to Dr. John C. Weaver by the pre-merger Board of Regents on June 18, 1971.
 Discussions by the Board of Regents centered on the question of whether President Weaver's statements at the January 7, 1972, meeting, of which an excerpt from the minutes is attached, effectively renounced any claim to future payment of the deferred salary benefits which he was offered and accepted. While President Weaver asked that no further consideration be given to the matter at that time, he did not do so in a way which waived or removed legal responsibility on the part of the Board of Regents acting for state government.
 The Board recommends recognition of the claim because it believes that in addition to the legal responsibility, fair dealing and the reputation of the State of Wisconsin, and its University System, for honorable fulfillment of commitments undertaken require that the obligation to Dr. Weaver be discharged in an equitable and responsible manner.
There is therefore a question of fact as to what were the terms of the understanding entered into between the Board and Dr. Weaver. My finding, previously stated above, that the Board lacked the authority to provide the deferred salary plan embodied in the Board resolution dated June 18, 1971 states only what is not an authorized part of the employment contract — not what remains. If the Legislature were to provide future payments to Dr. Weaver not on the basis that an enforceable employment contract contained a deferred salary plan, but rather, on the equitable basis that a salary plan not legally enforceable because beyond the authority of the Regents ought to be honored by the Legislature, such a determination, in conjunction with the determination that the salary subsequently was earned, would not constitute "extra compensation" prohibited by Wis. Const. art. IV, sec. 26.
Moreover, I cannot state as a matter of law whether Dr. Weaver's statements at the January 7, 1972, meeting of the Board of Regents constituted a withdrawal of his claim to payment of this portion of his compensation. A month-to-month acceptance of wages does not necessarily *Page 276 
bar an employe's later claim that he was not fully compensated under his agreement with his employer. Davies v. J. D. WilsonCo., 1 Wis.2d 443, 467, 785 N.W.2d 459 (1957).
While administrative agencies have only the specific and necessarily implied authority granted by statute, a Legislature's prerogatives are not limited by a prior Legislature's enactments. Further, the scope of the Legislature's constitutional authority is determined by a less restrictive test. As stated in Buse v.Smith, 74 Wis.2d 550, 564 (1976): "[I]t is a fundamental rule that when dealing with the state constitution as contrasted with the federal constitution, the search is not for a grant of power to the legislature, but for a restriction thereon." I find no provision of the Wisconsin Constitution prohibiting the Legislature from paying a claim based upon an employment agreement except as discussed above. Nor is the "public purpose" doctrine a bar since an expenditure may be based upon a legislative determination of a moral rather than a legal obligation and still be for a public purpose. State ex rel.Singer v. Boos, 44 Wis.2d 374, 384 (1969).
Since the terms of the compensation agreement involve a question of both fact and law, I cannot state as a matter of interpretation of law what constitutes the terms of the compensation agreement. If, however, the Legislature determines that Dr. Weaver was not fully paid under the terms of his agreement with the Board of Regents then Wis. Const. art. IV, sec. 26 does not preclude the Legislature from fulfilling the agreement under the rationale set forth in Department ofAdministration v. WERC.
BCL:WMS