JOSEPH HIRSCHBERG REVOCABLE LIVING TRUST,
Plaintiff-Appellant,†

v.

CITY OF MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 2013AP1944. Submitted on briefs May 6, 2014.
—Decided August 19, 2014*

2014 WI App 91

(Also reported in 855 N.W.2d 699.)

† Petition for Review denied December 18, 2014.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Nicholas J. Boerke* of *Michael Best & Friedrich LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Christine M. Quinn*, assistant city attorney.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J. Joseph Hirschberg Revocable Living Trust (Hirschberg) appeals a judgment dismissing its claim for refunds of property taxes based on the assertion that the assessments were excessive for several years. Additionally, Hirschberg claims the circuit court erred in two evidentiary rulings. We affirm.

## BACKGROUND

¶ 2. Hirschberg is the owner of a multiunit apartment building at 2100–2200 West College Avenue in the City of Milwaukee, known as College Manor. Between 2007 and 2011, the subject property was assessed by the City and placed on the City's assessment roll for the various years at values ranging from $1,507,000 to $1,608,000. These values resulted from the application of a mass appraisal technique,[1] which was necessary because over 150,000 parcels of City real estate are revalued every year. The assessment roll was signed by Peter Weissenfluh, the City's Chief Assessor.

¶ 3. Hirschberg filed claims for excessive assessment under WIS. STAT. § 74.37 (2011–12)[2] for 2007–2011 and paid the taxes as assessed for those years. Hirschberg's claims were denied by the City of Milwaukee. Hirschberg brought this action for excessive assessment under WIS. STAT. § 74.37(3)(d) (2007–08)[3] for 2008. The parties agreed to add the claims for 2007 and 2009–2011 to this case.

---

[1] *See* 1 *Wisconsin Property Assessment Manual*, 7–41 to 7–44 (rev. eff. 12/11).

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[3] WISCONSIN STAT. § 74.37(3)(d) provides:

**Claim on excessive assessment.**

734

¶ 4.    Hirschberg retained Michael A. Pitts to value the property for this litigation. Pitts used what he described as a comparable sales approach and an income capitalization approach. Pitts reconciled the two approaches to arrive at his final conclusion as to values for each of the relevant years. Pitts expressed his opinion that the fair market values at the relevant times ranged from $950,000 to $1,150,000.

¶ 5.    Weissenfluh submitted an assessment report on behalf of the City in which he explained that, as chief assessor, he signs the assessment roll for each tax year as required by WIS. STAT. § 70.49(1).[4] Weissenfluh's report, based on his individualized appraisal of College Manor, stated that the fair market values at the rel-

----

. . ..

(3)    Action on Claim.

. . ..

(d)    If the taxation district . . . disallows the claim, the claimant may commence an action in circuit court to recover the amount of the claim not allowed. The action shall be commenced within 90 days after the claimant receives notice by registered or certified mail that the claim is disallowed.

[4] WISCONSIN STAT.§ 70.49 provides:

**Affidavit of assessor.**

(1)    Before the meeting of the board of review, the assessor shall attach to the completed assessment roll an affidavit in a form prescribed by the department of revenue.

(2)    The value of all real and personal property entered into the assessment roll to which such affidavit is attached by the assessor shall, in all actions and proceedings involving such values, be presumptive evidence that all such properties have been justly and equitably assessed in proper relationship to each other.

(3)    No assessor shall be allowed in any court or place by oath or testimony to contradict or impeach any affidavit or certificate made or signed by the assessor as assessor.

evant times ranged from $1,656,000 to $1,776,000. Weissenfluh obtained these amounts by using a comparable sales approach. These amounts, he explained, are greater than the values listed on the assessment roll because:

> [W]hen assessors in the City of Milwaukee conduct their annual revaluation and assessment analysis, the process used is somewhat different from the methodologies used for this case. Specifically these annual revaluations are conducted using mass appraisal techniques. The City of Milwaukee's "mass appraisal" valuations use regression analysis and income models to value a large universe of properties as of a particular date. The models can use sales, income, expense, cost, or other metrics to estimate values. Results of these models are then verified and tested against market sales to insure reliability.
>
> Mass appraisal techniques serve two functions. First, mass appraisal ensures the equitable assessment of all property in a jurisdiction for tax purposes. . . . Second, mass appraisal is the only practical way for the Assessor's Office to revalue the over 150,000 parcels in the City of Milwaukee on an annual basis.
>
> Here . . . no such mass regression modeling is required. The value of the subject parcel, College Manor, is directly estimated using market data.

¶ 6.    The circuit court had before it three opinions of what the fair market value of College Manor was for each year from 2007 through 2011. Those values were:

| Year | Assessed value | Pitts's value at trial | Weissenfluh's value at trial |
|------|------|------|------|
| 2007 | $1,567,000 | $950,000 | $1,760,000 |
| 2008 | $1,591,000 | $1,000,000 | $1,776,000 |

| Year | Assessed value | Pitts's value at trial | Weissenfluh's value at trial |
|------|----------------|------------------------|------------------------------|
| 2009 | $1,608,000 | $1,050,000 | $1,759,000 |
| 2010 | $1,507,000 | $1,100,000 | $1,685,000 |
| 2011 | $1,507,000 | $1,150,000 | $1,656,000 |

¶ 7. The matter proceeded to trial, where the circuit court ultimately rejected Pitts's assessment as "unreliable." Specifically, the circuit court found:

> The method used by Michael Pitts of indirectly determining value for all other years at issue (except 2008) is non-standard and unreliable, and therefore does not accurately derive values for 2007, 2009, 2010, 2011, and 2012 and thus is not significant contrary evidence to the City's assessed values for any of the years at issue.

> The third-tier, income approach used by Mr. Michael Pitts is unreliable for improperly presuming constant income and expenses over all years at issue, and improperly overestimates the expense rations, improperly driving down their valuations. Thus the third-tier analysis used by the plaintiff is not significant contrary evidence to the City's assessed values for any of the years at issue.

> . . . [T]he City has followed the requirements of the law by presenting second-tier comparable sales that support the assessments, while the plaintiff has failed to provide substantive contrary evidence that meets the requirements of the law.

The circuit court upheld the original assessments, finding that the assessed values were not excessive and Hirschberg was not entitled to any refunds. This appeal follows. Additional facts are included as relevant to the discussion.

737

## DISCUSSION

¶ 8. On appeal, Hirschberg contends that: (1) the circuit court erroneously denied its motion to exclude Weissenfluh's report and corresponding testimony; (2) the circuit court erroneously limited Hirschberg's cross-examination of Weissenfluh because Hirschberg's line of questioning would have established that Weissenfluh's assessments violate constitutional uniformity; and (3) the circuit court incorrectly applied Wisconsin law when it concluded that the City's assessment complied with state law.

### Standard of Review.

¶ 9. "A party that is dissatisfied with an assessment may bring an excessive tax assessment claim under WIS. STAT.§ 74.37(3)(d)." *Allright Props., Inc. v. City of Milwaukee*, 2009 WI App 46, ¶ 12, 317 Wis. 2d 228, 767 N.W.2d 567. The circuit court must give presumptive weight to the assessor's assessment. *Id.* "[W]hen a city assessor correctly applies the *Property Assessment Manual* and Wisconsin statutes, and there is no significant evidence to the contrary, courts will reject a party's challenge to the assessment." *Id.*

¶ 10. We defer to a circuit court's findings of fact. *See U.S. Oil Co., Inc. v. City of Milwaukee*, 2011 WI App 4, ¶ 11, 331 Wis. 2d 407, 794 N.W.2d 904 (WI App 2010). "Where there is conflicting testimony, the fact finder—in this case the [circuit] court—is the ultimate arbiter of credibility, and we must accept any inferences drawn." *Id.* As to evidentiary issues, we "'will not disturb a circuit court's decision to admit or exclude

evidence unless the circuit court erroneously exercised its discretion.' " *Bonstores Realty One, LLC v. City of Wauwatosa*, 2013 WI App 131, ¶ 33, 351 Wis. 2d 439, 839 N.W.2d 893 (citation omitted). "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision that is not reasonably supported by the facts in the record. When the circuit court sits as factfinder, it is the ultimate arbiter of the weight and credibility afforded to the evidence." *Id.* (internal citation omitted).

¶ 11. "The application of the law to the facts, however, presents a question of law that we review independently." *See U.S. Oil Co.*, 331 Wis. 2d 407, ¶ 12. "Failure to make an assessment on the statutory basis is likewise an error of law, and we review *de novo* '[w]hether the [c]ity followed the statute in making its assessment.' " *Id.* (citation omitted; brackets in *U.S. Oil Co.*).

## I. The circuit court did not erroneously deny Hirschberg's motion to exclude Weissenfluh's report and corresponding testimony.

¶ 12. Prior to trial, Hirschberg filed a motion *in limine* to exclude Weissenfluh's individual assessment report and testimony on the grounds that both contradicted the assessment values listed in the City's assessment roll. Specifically, Hirschberg argued that Weissenfluh's report impeached the City's assessment roll—signed by Weissenfluh—contrary to Wis. Stat. § 70.49(3).[5] The circuit court denied Hirschberg's mo-

---

[5] Apparently a hearing was held on this motion well before trial, but there is no transcript of that hearing in this record.

tion and ultimately determined at trial that Weissenfluh's report, which explains the discrepancy between his personal assessment and the City's assessment roll, and his corresponding testimony were credible and in compliance with the Property Assessment Manual.

¶ 13. We have previously held that a city assessor's affidavit "'is not a certificate that the assessment roll contains no error but only that the assessor verily believes the roll is complete and the valuations of property are the just and equitable values.'" *See State ex rel. Brighton Square Co. v. City of Madison*, 178 Wis. 2d 577, 586, 504 N.W.2d 436 (Ct. App. 1993) (citation omitted). We also concluded that "when the assessor or the city disavows the correctness of a valuation of comparable property shown on the assessment roll, the burden is on the assessor or city to explain why the valuation is incorrect." *Id.*

¶ 14. Weissenfluh's current opinions of the fair market values of the subject property are not contradictions or impeachments of the previously assessed values. Neither Weissenfluh nor the City disavowed the correctness of the original assessment. For the purposes of this litigation, Weissenfluh did a separate appraisal of College Manor for each of the five years in question. He explained that the more detailed comparable sales

The circuit court denied Hirschberg's motion *in limine* "based upon all of the files, documents, records and proceedings had herein . . . that Plaintiff's Motion in Limine to exclude the report of Peter Weissenfluh is denied." It is the appellant's responsibility to provide a complete record as to all issues it raises on appeal. *See Manke v. Physicians Ins. Co. of Wis., Inc.*, 2006 WI App 50, ¶ 60, 289 Wis. 2d 750, 712 N.W.2d 40. In the absence of a complete record, we presume the missing record supports the circuit court's decision. *See Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 634, 273 N.W.2d 233 (1979).

analysis done for this litigation "support and demonstrate the reasonableness, accuracy, and fairness of these original assessment values."

██

¶ 15.  The circuit court upheld the original assessments and properly relied on Weissenfluh's report and testimony to make that determination. The court appropriately admitted Weissenfluh's report and testimony to explain how he arrived at his current opinion of the assessment values, and to explain how and why the values differed from the original assessment values. Hirschberg was in no way prejudiced by this decision, as the taxes already paid could not be increased beyond those paid by Hirschberg and accepted by the City. *See Trailwood Ventures, LLC v. Village of Kronenwetter*, 2009 WI App 18, ¶ 13, 315 Wis. 2d 791, 762 N.W.2d 841 (WI App 2008).

## II.  The circuit court did not erroneously limit cross-examination based on assessed values considered in a comparable sales analysis.

¶ 16.  The City objected to Hirschberg's questions regarding the *assessments* of properties used in Weissenfluh's comparable sales analysis, arguing that the assessments were irrelevant. The circuit court sustained the City's objection. Hirschberg argues here that this line of questioning should have been allowed because it establishes that the assessments of College Manor are discriminatory and in violation of the uniformity required by Article VIII, section 1 of the Wisconsin Constitution.

¶ 17.  At trial, Hirschberg did not justify this line of questioning based on the uniformity clause, nor was that clause put in issue either by specific reference or by

facts pled in the complaint. On appeal, however, Hirschberg argues that the "line of questioning was relevant because it would have established that the assessments of the Subject Property are inequitably high and therefore more probably excessive." We disagree.

¶ 18.   We note that Hirschberg did not raise the uniformity issue in its complaint when it challenged the assessment values in the circuit court. Hirschberg has therefore forfeited any challenges based on the uniformity clause. *See State v. Ndina*, 2009 WI 21, ¶¶ 29–31, 315 Wis. 2d 653, 761 N.W.2d 612 (failure to timely raise argument forfeits the argument on appeal). The circuit court properly refused to allow Hirschberg to solicit testimony relevant only to a uniformity challenge. WISCONSIN STAT. § 904.01 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This litigation is an excessive assessment claim. To establish any relevance of the past assessed value of a comparable property and the sale price of that comparable property at some time in the past would inevitably lead to mini-trials on each comparable property about *why* there was a difference between the assessment and sale price of the collateral property. Hirschberg has not shown that, *in an excessive assessment claim*, the past *assessed* values of certain comparable properties are necessarily relevant to the past *sale prices* of those properties. Such historic evidence does not shed relevant light on the fair market value of the property which it claimed was excessively assessed. The circuit court properly declined to leap into multiple collateral trials with no showing that the information sought was actually relevant to the claim of

excessive assessment. Accordingly, the circuit court correctly limited Hirschberg's cross-examination.

### III. The circuit court correctly applied Wisconsin property assessment law.

¶ 19.    Hirschberg argues that the circuit court failed to correctly apply Wisconsin property assessment law because it:    (1) incorrectly held that the subject property was assessed and valued by the City using a second-tier approach, and (2) incorrectly held that the City used the "best information" available in supporting those assessments.

¶ 20.    The hierarchy of methods of assessment in Wisconsin is long-standing and well-understood. It was summarized by our supreme court in *Adams Outdoor Advertising, Ltd. v. City of Madison*, 2006 WI 104, ¶ 34, 294 Wis. 2d 441, 717 N.W.2d 803:

> The *Property Assessment Manual* and case law set forth a three-tier assessment methodology to ascertain [fair-market] value. Evidence of an arms-length sale of the subject property is the best evidence of [fair-market] value. If there has been no recent sale of the subject property, an assessor must consider sales of reasonably comparable properties. Only if there has been no arms-length sale and there are no reasonably comparable sales may an assessor use any of the third-tier assessment methodologies.

(Internal citations omitted; brackets in *Adams Outdoor Advertising*.)

▆▆

¶ 21.    If the plaintiff does not overcome the presumption of the assessment's correctness, pursuant to Wis. Stat. § 70.49(2), the plaintiff cannot prevail, and

743

the assessment must be sustained. *See Bonstores Realty One*, 351 Wis. 2d 439, ¶ 10. "We may not consider whether the evidence might support a contrary conclusion, or a contrary inference that is reasonable." *Id.*

¶ 22. Hirschberg claims that Weissenfluh used a "third-tier" income approach to valuing the property, and that he did this incorrectly. However, Weissenfluh specifically noted that he used the income approach only to check the reasonableness of his conclusion, and that he based his opinion on the comparable sales approach, which he separately applied to each year in dispute.

¶ 23. Regarding the comparable sales analysis, the circuit court stated:

- "Weissenfluh did a comparable sales analysis for each of the years and found comparable properties for each of those sales years."

- "The Pitts approach is to do a comparable sales analysis for the year 2010. . . . [T]hen [he] extrapolated back and forth to come up with his valuation figure, I think it was like a 6.7 percent . . . or 6.4."

- "Pitts [explained] . . . [t]hat it costs more to do comparable sales analysis for each year, that it was less costly to the client to do the market trend."

- "[F]or the comparable[s] that Pitts used . . . three were chosen as comparables. . . . One of them was a property on the northwest side of the City of Milwaukee, . . . geographically . . . substantially removed from the subject property. . . . His explanation for why he used that property isn't . . . something that convinces me."

- "One of the criticisms that Weissenfluh has . . . with that property [is] . . . the property values in that

part of Milwaukee are . . . 39 percent lower than the south side of Milwaukee. . . . [T]hat causes me real questions as to the comparability."

- "[U]nder the Tier 2 approach, I find the Weissenfluh valuation . . . to be more reliable and therefore defensible and certainly would be more heavily weigh[ed] . . . as far as determining . . . the actual . . . fair [market] value of the property . . . as of that date."

(Some formatting altered.) Regarding the income approach, the court found:

- "Pitts looked at . . . the rent rolls from College Manor. I think it was one month, and then . . . just used that to extrapolate all the figures, that's including estimates relating to other years. . . . [I]n the end . . . it does lend itself to less reliability certainly as to the actual rent amounts for those other varying years."

- "I'm not satisfied by that methodology. . . . [D]oing comparable sales for each separate year is going to result in more accurate figures and valuations."

- "[J]ust extrapolating a uniform percentage of increase in market value and applying it throughout the period . . . I don't think . . . it is preferable to the approach that was taken by Weissenfluh for each of those years."

- "I'm not convinced that the Tier 3 approach is otherwise determinative on any of the issues based on the case law, based on the reliability [of] . . . the comparable sales approach."

- "To the extent that the parties have different methodologies in how they ultimately came to the Tier 3 conclusions, again Weissenfluh convinced me that his are more reliable."

(Some formatting altered.)

745

¶ 24. Based on *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 173 N.W.2d 627 (1970), the circuit court correctly acknowledged that "the methods of valuation should be recent sale or comparable sales, and . . . if that information is not available, we turn to income and other sources." *See id.* at 686. The circuit court explained that the preference for comparable sales valuation is because "what the property can generate [in income] is really substantially what we expect to be factored into . . . the sale [price]. So long as you have comparable sales that you feel are reliable . . . that income approach ought [to] already be sort of built into the valuation under that Tier 2 approach."

¶ 25. The circuit court specifically found that Weissenfluh's method of analysis was more reliable than Pitts's method, both as to the tier-two comparable sales approach, and as to the tier-three income approach, which Weissenfluh used only as a check on the accuracy of the comparable sales conclusion.

¶ 26. The circuit court held "the fair market value to be consistent with the assessments," which the court found were "not excessive in terms of exceeding fair market value." The circuit court concluded that Hirschberg's [evidence] did not "rise[] to the level of being significant contrary evidence" and Hirschberg had not overcome the presumption that the assessment was correct.

¶ 27. There is ample evidence in the record to support the circuit court's factual findings. We conclude that the circuit court properly applied Wisconsin property assessment law. Further, the circuit court's factual findings are overwhelmingly supported by the record in

this case. The circuit court's conclusion that the presumption of accuracy of the assessments was not overcome by significant contrary evidence is consistent with Wisconsin law. We affirm.

*By the Court.*—Judgment affirmed.