COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP271**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV316

**IN COURT OF APPEALS
DISTRICT III**

KAYLEE ANN FRANCOIS,

PETITIONER-RESPONDENT,

V.

DAVID ALLEN OLSEN,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David Olsen appeals a harassment injunction order entered by default, in favor of Kaylee Francois. Olsen also appeals the order

denying his motion to reopen the default judgment. Olsen argues the circuit court erroneously exercised its discretion in denying his motion to reopen and in granting the injunction in the first instance. Additionally, Olsen asserts that the statute governing harassment injunctions, WIS. STAT. § 813.125(4) (2017-18),[1] is unconstitutional. We reject Olsen's arguments and affirm the orders.[2]

## BACKGROUND

¶2      On Tuesday, December 19, 2017, Francois petitioned the circuit court for a temporary restraining order (TRO) and also moved for an injunction hearing, alleging that Olsen, her former college professor, had engaged in harassing conduct. On the same day the petition was filed, the circuit court issued a TRO and notice that an injunction hearing had been scheduled for 9:00 a.m. on the following Tuesday, December 26. The notice included language warning Olsen that his failure to appear could result in an injunction being issued. Notice of both the TRO and the scheduled hearing were personally served on Olsen at 8:50 a.m. on Wednesday, December 20.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Olsen moved this court for summary reversal of the circuit court's orders based on Francois's failure to file a brief. By order dated September 12, 2018, this court acknowledged that we have discretion to summarily reverse a circuit court order on appeal when a respondent fails to brief an appeal under circumstances showing abandonment or bad faith. *See State ex rel. Blackdeer v. Levis Twp.*, 176 Wis. 2d 252, 259-60, 500 N.W.2d 339 (Ct. App. 1993) (summary reversal is an appropriate sanction for a respondent's violation of briefing requirements).

Although the motion for summary reversal was denied at that time, our order directed the clerk to submit the case to this court to determine whether the appeal could be decided based solely upon Olsen's brief and record. After review, we have concluded it is appropriate to decide this matter without Francois's brief. We will not summarily reverse on procedural grounds orders that are otherwise correct on their merits. Moreover, although Francois did not file a dedicated brief, she submitted correspondence in support of the injunction, thereby showing she has not abandoned either her petition or her opposition to vacating the injunction order.

¶3    On Friday, December 22, 2017, Olsen called the clerk of circuit courts' office and left several voice messages stating he could not rent a car until 8:00 a.m. on the morning of the hearing, making it impossible for him to travel from his Minnesota home and arrive at the Dunn County Courthouse by the scheduled hearing time. The courthouse, however, was closed on December 22.

¶4    On December 26, after waiting almost twenty minutes, and in the absence of a request for a continuance, the circuit court proceeded with the injunction hearing. Following Francois's testimony, the court granted the injunction for a period of four years. Olsen arrived after the hearing concluded and, later that day, filed a motion to reopen. The motion to reopen was denied following a hearing, and this appeal follows.

## DISCUSSION

¶5    First, Olsen suggests he did not receive adequate notice of the injunction hearing because the courthouse was open for only thirty-one hours from the time that he was served with notice until the scheduled proceeding, thus depriving him of his right to a "meaningful hearing." Although not fully developed, we will address whether Olsen received adequate notice of the hearing pursuant to the statutes governing the computation of time. The meaning of a statute and its application to undisputed facts are questions of law we review de novo. *Progressive Cas. Ins. Co. v. Bauer*, 2007 WI App 122, ¶5, 301 Wis. 2d 491, 731 N.W.2d 378.

¶6    WISCONSIN STAT. § 801.15(4) provides, in relevant part: "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the

hearing, unless a different period is fixed by statute *or by order of the court*." (Emphasis added.) The statute also provides:

> Notwithstanding ss. 985.09 and 990.001 (4), in computing any period of time prescribed or allowed by chs. 801 to 847, by any other statute governing actions and special proceedings, or by order of court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a day the clerk of courts office is closed. When the period of time prescribed or allowed is less than 11 days, Saturdays, Sundays and holidays shall be excluded in the computation.

WIS. STAT. § 801.15(1)(b).

¶7      In the present case, the circuit court ordered that service of the TRO and notice of the injunction hearing "be made at least 48 hours prior to the hearing." Because Olsen was served on December 20, that day is excluded under WIS. STAT. § 801.15(1)(b). However, we count December 21 and December 22, notwithstanding the fact that the clerk of circuit courts' office was closed on December 22. Under the plain reading of the statute, December 22 is not excluded from the computation because it is not the "last day of the period so computed"— here, the last day of the period was the December 26 hearing date. If the legislature had intended to exclude all days on which the clerk's office is closed, it would have done so. Instead, it only excluded days the clerk's office is closed if those days fall on the last day of the period so computed. Olsen, therefore, received notice of the hearing as required by statute.

¶8      Next, Olsen argues the circuit court erred by denying his motion to reopen the default judgment, claiming he is entitled to relief under specified subsections of WIS. STAT. § 806.07. A circuit court has wide discretion in determining whether to grant relief from a judgment under § 806.07. *See Miller v.*

4

*Hanover Ins. Co.*, 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493. We review such a determination under the erroneous exercise of discretion standard. *Id.* A court properly exercises its discretion if it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). We will not reverse a discretionary decision if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Miller*, 326 Wis. 2d 640, ¶30. We generally look for reasons to sustain a circuit court's discretionary determination. *Id.* We also uphold a circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2).

¶9 Olsen argues he is entitled to relief under WIS. STAT. § 806.07(1)(a) [involving mistake, inadvertence, surprise or excusable neglect]; (c) [involving fraud, misrepresentation or other misconduct of an adverse party]; and (h) [for any other reasons justifying relief from the operation of the judgment]. However, Olsen's argument as to the application of § 806.07 is not fully developed. At best, Olsen contends that his failure to appear at the hearing was due to "excusable neglect." *See* § 806.07(1)(a).

¶10 Excusable neglect is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." *Mohns, Inc. v. TCF Nat'l Bank*, 2006 WI App 65, ¶9, 292 Wis. 2d 243, 714 N.W.2d 245 (citation omitted). It is not synonymous with simple carelessness or inattentiveness. *Id.* The burden of showing excusable neglect is on the party seeking relief from the default judgment. *See Hansher v. Kaishian*, 79 Wis. 2d 374, 389, 255 N.W.2d 564 (1977). When determining whether a party seeking relief from a default judgment has proven excusable neglect, "the circuit court should consider whether

the moving party has acted promptly to remedy the default judgment, whether the default judgment imposes excessive damages, and whether vacatur of the judgment is necessary to prevent a miscarriage of justice." *Mohns*, 292 Wis. 2d 243, ¶10. The circuit court, however, "must also consider that the law favors the finality of judgments, and the reluctance to excuse neglect when too easy a standard for the vacatur of default judgments would reduce deterrence to litigation-delay." *Id.*

¶11 Even assuming the existence of excusable neglect, Olsen must also provide a meritorious defense in order for the default judgment to be reopened. *See* *Hollingsworth v. American Fin. Corp.*, 86 Wis. 2d 172, 184, 271 N.W.2d 872 (1978). However, if there is no showing that the judgment was the product of excusable neglect, the court need not reach whether there was a meritorious defense. *Id.* at 184-85.

¶12 Although the circuit court did not specifically reference WIS. STAT. § 806.07(1)(a), it considered factors relevant under that statute in deciding the motion. The court found that Olsen had two business days to properly contact the court and request either to appear by telephone or to reschedule the hearing. Olsen was served notice on the morning of December 20, yet he did not attempt to contact the courthouse until December 22, by which time the clerk's office was closed. Further, Olsen's voicemails to the court did not advise that Olsen sought an adjournment, leaving the court to guess whether Olsen would appear for the hearing. In fact, he was significantly delayed, arriving more than an hour after the scheduled hearing. The court added that, in any event, Olsen needed permission to delay the hearing—voicemails simply stating he could not make it on time were insufficient and are "not how we operate the court." Moreover, Olsen did not call on the morning of the hearing to inform the court that he was on his way or to

otherwise participate by telephone. Although Olsen testified that he did not have a working telephone, it appears the court did not find his explanations credible. Rather, as the court noted, Olsen "decided that was the best [he] could do and … [he] was going to show up when [he] showed up."

¶13    The circuit court reiterated that a hearing was held, testimony was given, a record was made and, ultimately, "the request [for an injunction] had merit." It thus implicitly found that finality of the order entered on some evidence was more important than reopening the matter for additional evidence. *State v. Echols*, 175 Wis. 2d 653, 672, 499 N.W.2d 631 (1993) ("An implicit finding of fact is sufficient when the facts of record support the decision of the trial court."). Because Olsen failed to establish excusable neglect, the court properly denied his motion to reopen the default judgment and it did not need to consider whether he had a meritorious defense to the petition for an injunction. *See Hollingsworth*, 86 Wis. 2d at 184-85.

¶14    We next consider whether the circuit court properly issued an injunction in the first instance. To grant an injunction under WIS. STAT. § 813.125, the circuit court must find "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." WIS. STAT. § 813.125(4)(a)3. This presents a mixed question of fact and law. *M.Q. v. Z.Q.*, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989). We will not set aside the circuit court's factual findings unless they are clearly erroneous, *see* WIS. STAT. § 805.17(2), though we independently review the circuit court's conclusion, based on the established facts, whether such reasonable grounds exist. *M.Q.*, 152 Wis. 2d at 708. Whether to grant an injunction, however, is within the sound discretion of the circuit court, and our review

ultimately is limited to whether that discretion was properly exercised. ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359.

¶15    Relevant to this appeal, "harassment" means "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." WIS. STAT. § 813.125(1)(am)2. At the petition hearing, Francois testified that Olsen was her professor when she was a freshman at the University of Wisconsin-Stout (UW-Stout) in the fall of 2015. After the class ended, Francois received emails from Olsen that Francois deemed "weird" and "too personal." As examples, Francois recounted emails in which Olsen said he heard her singing in the hallways, and he thought she had a nice voice. Olsen also talked about the meaning of friendship and stated that he believed Francois had a temper.

¶16    In the summer of 2016, Olsen sent Francois a "long letter" stating he was coming to Green Bay, where she lived, to visit the botanical gardens, and he wanted to meet with her to talk. In the same letter, Olsen suggested that Francois used her "male peers" and her "body" to earn her grades. Olsen also noted his belief that Francois purposefully "led another student in [his] class astray" and questioned Francois's motivation for doing so.

¶17    Francois testified that in February 2017, she sent Olsen an email, with a copy to the UW-Stout Dean of Students, asking Olsen to cease contact with her. According to Francois, she continued receiving emails from Olsen, who never mentioned the email in which Francois asked him to cease contact. In the subsequent emails, Olsen stated that he had watched college softball games online in which Francois was a player. Olsen also expressed his interest in attending a game that was scheduled near his home in Minnesota. Francois acknowledged

that some of the emails to her were also addressed to other students and involved "opportunities he saw and just different random things."

¶18   Francois testified that sometime around March 2017, she reported the emails to the UW-Stout Police Department, and she was informed that the police told Olsen to cease contact with Francois. On December 15, 2017, Francois received a package addressed to her in a lecture hall where she has a number of classes. Because the package had a Minnesota return address, she brought the package to the police station to open. Enclosed was a "bird feeder wreath" Francois had sold to Olsen as a fundraiser when she was his student. Olsen also enclosed a letter saying he found the wreath while cleaning his house; he thought he should return it to her; and she could choose what to do with it. Francois confirmed that although Olsen never threatened harm or mentioned firearms, his actions gave her "the creeps," as he continued to attempt contact with her despite her requests to stop.

¶19   Before deciding the petition, the circuit court reiterated that it had waited almost twenty minutes for Olsen to appear before proceeding with the hearing. The court also recounted that Olsen had left voicemail messages but had not requested to have the hearing continued or rescheduled, adding "a message simply saying I might be late … just doesn't cut it," as the court has "a busy schedule, calendar." The court determined that although Olsen had not made any threats of harm, there was a "pattern of these messages repeatedly from a 63-year-old man to a 20-year-old … former student of his," with content appearing to be "somewhat creepy." The court further noted this contact "would be disturbing and could have the effect of intimidating somebody," adding that it did not appear there was any legitimate purpose "for making these communications."

¶20     The circuit court concluded there were reasonable grounds to believe that Olsen had engaged in harassment with intent to harass or intimidate, "[p]articularly, in connection with some of these messages where he appears to be trying to develop some kind of a relationship but at the same time, indicates that there may be some things that [Francois] did that may have been inappropriate on her part."   To the extent Olsen contends the court "did not apply WIS. STAT. §§ 813.125(1) and [813.125(4)(a)3.] to the facts," his argument is undeveloped and, therefore, unpersuasive.   Ultimately, the court made the minimum findings necessary to issue the injunction pursuant to § 813.125(4), and those findings were supported by the record before it.

¶21     Olsen argues on appeal that there are innocent explanations for the various communications.   The fact that there may be countervailing testimony Olsen might have provided had he appeared does not establish that the circuit court erroneously exercised its discretion in granting the injunction when the record supports the court's findings.   Olsen also asserts the court failed to follow "the rules of evidence" when it did not ask Francois for copies of the emails. Olsen, however, provides no authority requiring the court to take additional evidence if it was convinced by Francois's testimony.   "When the circuit court sits as factfinder, it is the ultimate arbiter of the weight and credibility afforded to the evidence."   *Joseph Hirschberg Revocable Living Tr. v. City of Milwaukee*, 2014 WI App 91, ¶10, 356 Wis. 2d 730, 855 N.W.2d 699.

¶22     Finally, and for the first time on appeal, Olsen challenges the constitutionality of a section of the statute governing harassment injunctions, WIS. STAT. § 813.125(4)(a)3.   Specifically, he asserts the "reasonable grounds" standard therein violates due process.   This argument, however, is not properly before this court.   Generally, issues not raised in or considered by the circuit court

10

will not be considered for the first time on appeal. ***Brown County v. DHSS***, 103 Wis. 2d 37, 42, 307 N.W.2d 247 (1981). Moreover, a party is foreclosed from challenging the constitutionality of a statute unless the party gives the Attorney General of the State of Wisconsin a timely opportunity to appear and defend the constitutionality of the law. ***Kurtz v. City of Waukesha***, 91 Wis. 2d 103, 117, 280 N.W.2d 757 (1979). Nothing in the record indicates service upon the Attorney General in connection with either the circuit court action or this appeal.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.